ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. BALTHROP. (No. 7102.)

(Court of Civil Appeals of Texas. Dallas. May 9, 1914. Rehearing Denied May 30, 1914.)

1. RAILROADS (§ 356*)—INJURIES TO PERSONS ON TRACKS—LICENSEES—WHO ARE.

Where a railroad company acquiesced in the public's use of a path on its right of way for many years, there was an implied permission which rendered passers licensees, instead of trespassers.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1228–1234; Dec. Dig. § 356.*]

2. NEGLIGENCE (§ 32*)—LICENSEES—STATUS.

While a landowner is not bound to keep his premises safe for the benefit of licensees, yet

he is liable for injuries received by licensees owing to his active negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

3. RAILROADS (§ 364*)—INJURIES TO PERSONS BESIDE TRACKS—LICENSEES—ACTIVE NEGLIGENCE.

Where a licensee proceeding on a path adjoining a railroad track was injured by a piece of scantling which the movement of the train threw from one of the cars, the railroad company was liable for the injury; its negligence in allowing the scantling to be on the floor of the car being active negligence, instead of a mere condition of the premises.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1252, 1253; Dec. Dig. § 364.*]

4. RAILROADS (§ 398*)—INJURIES TO PERSONS NEAR TRACKS—ACTIONS—JURY QUESTION.

In an action for damages for injuries to plaintiff's wife hurt by a piece of scantling thrown from a moving train, which struck her while walking on a path adjoining the tracks, a finding that the railroad company was negligent in not discovering and removing the scantling from its car *held* justified under the evidence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. § 398.*]

5. RAILROADS (§ 398*)—INJURIES TO PERSONS ON TRACKS—ACTIONS—FINDINGS.

A finding by the jury that plaintiff's wife was struck by a piece of scantling, thrown from a moving train, while walking on a path adjacent to the tracks *held* not in conflict with the physical facts.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. § 398.*]

6. RAILROADS (§ 400*)—INJURIES TO LICENSEE — CONTRIBUTORY NEGLIGENCE — QUESTIONS FOR JURY.

Where a licensee using a path on the right of way of a railroad company was injured by the active negligence of the company, recovery cannot be defeated because there was another way as near and in as good condition as the path over which the licensee might have traveled; the question whether she was guilty of contributory negligence in selecting the path being for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

7. RAILROADS (§ 401*)—INJURIES TO LICENSEE —ACTIONS—INSTRUCTIONS TO JURY.

In an action for injuries to a licensee struck by a piece of scantling thrown from a moving train, an instruction that, if the scantling was, by reason of the roughness of the tracks and the motion of the train, thrown against the licensee, and if the railroad company, by reasonable care, could have discovered and removed it, finding should be for plaintiff is not improper, as imposing upon the railroad company the duty of keeping its tracks in good condition for the benefit of licensees; the only negligence submitted being that of leaving the scantling in the car.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1382–1390; Dec. Dig. § 401.*]

8. RAILROADS (§ 395*)—INJURIES TO PERSONS NEAR TRACKS—ACTIONS—EVIDENCE—ADMISSIBILITY.

Where a licensee, while using a path near a railroad track, was struck by a piece of scantling hurled from a moving train, and the negligence claimed was that the railroad company failed to remove the scantling from the floor of the car, evidence of the roughness of the track, which tended with the motion of the train to throw the scantling out of the car, is admissible.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1339, 1340; Dec. Dig. § 395.*]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by W. R. Balthrop against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Crosby, Hamilton & Harrell, of Greenville, for appellant. Evans & Carpenter, of Greenville, for appellee.

RASBURY, J. Appellee sued appellant for damages for personal injuries alleged to have been inflicted upon his wife by the negligence of appellant.

Appellee alleged that, while his wife was pursuing her way over and upon a pathway on the south side of appellant's track within the corporate limits of Wolfe City, which had been used by the public for a period of more than ten years with the knowledge and consent of appellant, a freight train approached her from the opposite direction in which she was moving, and, while passing her on a part of the track which curved toward her, she was struck by some object protruding from the cars or hurled therefrom by the movement of the train superinduced by the curve over which the train was passing at the point of accident, as well as by a loose joint in the track at said point.

Appellant on the merits tendered the general issue, contributory negligence and assumed risk on the part of appellee's wife in traveling over the pathway when there was a nearer, better, and safer way, and in using the pathway when a train was passing, and that appellee's wife was a trespasser, and for that reason was guilty of contributory negligence in walking over said pathway at all.

In support of the verdict of the jury evidence tending to establish the following facts was adduced, to wit: Mrs. Balthrop had gone on an errand to a neighbor's residence in Wolfe City adjacent to appellant's line of railway, which runs approximately east and west. Returning she entered upon a pathway on the south side of the appellant's tracks. This pathway was generally used by the public in going to and from points in the neighborhood, in which use appellant had acquiesced for a number of years. As Mrs. Balthrop entered upon the pathway, appellant's train was leaving its depot at Wolfe City, the depot being about one-fourth of a mile west of the point where she entered upon the pathway, and was observed by her. Before the train reached her, she halted until the engine passed. After the engine passed she resumed her journey along the pathway, she moving west, and the train east.

This pathway was about three feet from the end of the ties, and, according to Mrs. Balthrop, she could not have touched the moving train as she pursued her way by extending her arm. When several cars had passed her, and as she was proceeding on her way with a bucket of milk in her hand, she was struck a "blasting lick," as she puts it, on the right side, the one next the train, by some object from the cars. She testified she was making her way carefully without excitement, as she had done many times before, and did not know what struck her before losing consciousness. When found, Mrs. Balthrop was lying across the pathway, her head about two feet or less from the end of the ties, with the right hand up, which would have reached the south rail if it had been extended. Mrs. Balthrop was wearing gloves, and when the glove was removed from her right hand it was found that the hand was badly crushed, the thumb mashed off below the first joint, the bone protruding, the middle finger bone broken, and the edge of the hand from the tip of the little finger to the wrist mashed. The hand was given medical attention, but the treatment was unsuccessful, and it was finally amputated. Mrs. Balthrop, while unable to say definitely what struck her, except an object, was positive that it was not the train. When she was found, the bucket of milk she was carrying was found within four or six feet of her, about two feet from the rail, the contents intact. There was also found about six or eight or ten feet from her, and slightly in advance of her, a piece of 2x6 scantling about three feet long. Appellant attached to its train at Wolfe City two car loads of live stock. The shippers of the stock, in order to insure their safety, crated them in the cars. The manner of crating was to nail a 2x6 scantling across the car fastening it between the slats, the car being a stock car. The scantlings used for such purpose were from two to four feet longer than was necessary, and that much was sawed off of one end of each of the scantlings used and permitted to drop upon the floor of the car. The stock was not completely loaded and crated when the train reached Wolfe City, and in the hurry to get away the pieces of scantling were left in the car, and some of them found in the car on its arrival at Commerce from Wolfe City. It also appeared circumstantially that the stock in the car tore down and dislodged some of the scantlings before the train left Wolfe City. It was the duty of appellant's trainmen to inspect the car before it left Wolfe City and remove the pieces of scantling, which was not done. Appellant's track from the point where Mrs. Balthrop entered upon the pathway to its depot at Wolfe City has high and low places, which caused the cars to rock or seesaw, and produced a motion which tended to, and had on occasions, hurled or thrown substances from loaded cars. There was a jury trial resulting in a ver-

dict for appellee, followed by like judgment, from which this appeal is taken.

[1-3] The first assignment of error complains of the refusal of the court below to direct verdict for appellee, and the first and second propositions asserted thereunder are that the evidence shows without dispute that there was a nearer and safer way than the path chosen by appellee's wife, and that in taking the route she did she contributed to her injury, and is hence precluded from recovery. Under the facts shown in the record and the negligence submitted to and found by the jury we conclude that the contention is unsound. There was ample testimony adduced by appellee to sustain the finding of the jury that the public in Wolfe City had habitually and frequently used the path by the side of appellant's tracks as a public highway for a long period of years, and that such use by the public of its right of way was known to, and acquiesced in by, appellant. Such use constituted in law an implied permission for the public to use the path, and constituted them licensees, as distinguished from trespassers, and incidentally, and in consonance with the rule, if appellee's wife's injuries resulted from the dangers inherent to the use of the path while in the exercise of ordinary prudence, she, of course, contributed thereto by entering upon the path. G., C. & S. F. Ry. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068; City of Greenville v. Pitts, 102 Tex. 2, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 13 Am. St. Rep. 843; G., H. & S. A. Ry. Co. v. Matzdorf, 102 Tex. 42, 112 S. W. 1036, 20 L. R. A. (N. S.) 833, 132 Am. St. Rep. 849. But the only ground upon which the jury was permitted to find against appellant was that the injuries received by Mrs. Balthrop were due to being struck by a piece of scantling being thrown from one of its cars which had been left in the car by the shippers when loading and crating the live stock referred to, and that appellant by the exercise of ordinary care, could have discovered the pieces of scantling in the car. Thus the question at once arises whether the leaving of the pieces of scantling in the car and the failure of appellant's employés to discover same and its subsequent ejection from the car by the motion of the train was one of the inherent or ordinary and usual dangers incident to the use of the pathway on appellant's right of way. We conclude it was not. The rule is that, when a licensee is injured as a result of the passive negligence of the owner of the premises, such, by way of illustration, as a failure in the instant case of appellant to keep the pathway in a safe condition, any injury resulting from such unsafe condition would not be actionable, since a licensee who goes upon defective premises and is injured because of such defect thereby contributes to the result. But, when a licensee is injured while on the premises by some active or special act of negligence of the owner, suit may be maintained. St. Lou-

is S. W. Ry. Co. of Tex. v. Wilcox, 57 Tex. Civ. App. 3, 121 S. W. 588; I. & G. N. Ry. Co. v. Kent, 124 S. W. 179; Houston Belt & Terminal Railway Co. v. O'Leary, 136 S. W. 601. Measured by the rule stated, we think that the act of the appellant in permitting the pieces of scantling to remain in the car after the shippers had crated their stock, and which was found by the jury to be negligence, may safely be said to be active negligence, and not a danger or risk inherent to the premises over which appellee's wife was permissively traveling at the time of her injury. The instant case is not dissimilar to the Kent Case, supra, wherein we held that the railway company was guilty of active negligence when one of its employés struck Kent, a licensee, in the back with a truck which was being rapidly pushed along and upon the depot platform, for the reason that Kent's injuries resulted, not from any danger inherent from the use of the platform upon which he was licensed to be, but from the affirmative act of the owner's agents in negligently pushing the truck against him. As much may be said of the instant case. While pursuing her way over a pathway which she was licensed by appellant to use, appellee's wife was injured, not by reason of any defect in the pathway, nor by going too close to, or stumbling upon, the train, or colliding therewith, but by being struck by a piece of scantling hurled from the train by force of its motion, and which had been negligently left in the car by appellant's employés, who were charged with the duty of inspection. It may be conceded that one of the inherent risks or dangers of the use of the pathway appellee's wife was using was that trains would pass in close proximity to the traveler, and that conceivable dangers and risks were imminent, but it is not at all inconsistent with such probability to say that the rule none the less contemplates the exercise of ordinary care to prevent the occurrence shown under the facts in the present case, and as is illustrated in St. Louis S. W. Ry. Co. of Tex. v. Wilcox, supra, where we sustained the finding of the jury that appellant had not exercised ordinary care when it so loaded cross-ties upon one of its cars that one protruded from the car and struck and injured appellee, a licensee upon the company's right of way. Accordingly we conclude that appellee's wife was not guilty of contributory negligence, since her injuries did not result from the inherent or usual and ordinary dangers of the pathway she was traveling, but from the active negligence of appellant, independent of any contributing cause afforded either by the pathway, the tracks it paralleled, or the train which ran over the tracks, or by appellee's wife.

[4] The third proposition asserted under said assignment is that the peremptory charge should have been given, because the acts of negligence alleged and proven by appellee was that of the shippers, for which appellee could not be held responsible. We think the contention incorrect, and that the issue was properly referred to the jury for their determination. Such conclusion is, of course, based upon the rule that the injury to appellee's wife, or some injury of like character to others similarly situated, ought to have been anticipated by appellant as a probable sequence of the negligence charged. In reference to such matters it is said in Washington v. M., K. & T. Ry. Co., 90 Tex. 314, 38 S. W. 764:

"Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as, in the ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care."

It was the duty of appellant, as shown by the evidence, to inspect the car after the live stock had been crated. It was also shown to be the duty of appellant to generally inspect all cars; the purpose being to see that all cars were so loaded as not to endanger the lives of those on the right of way. Already we have shown that the right of way at the point of the accident was a public pathway used generally by the public with the knowledge and consent of appellant. From these facts, and the facts and circumstances relating directly to the injury of appellee's wife, we think the finding of the jury that appellee's wife's injuries were caused by the piece of scantling hurled from the car by the motion of the train is supported by the evidence and authorized by law.

[5] The fourth proposition under said assignment asserts that the peremptory instruction should have been given, for the reason that it was a physical impossibility for the injuries to have been inflicted as detailed by appellee's witnesses. The effect of such contention is to assert that the ejection of the piece of scantling from the car was impossible, because in conflict with proven and recognized natural and physical law. It is clear that in all other respects the findings of the jury are sustained by the evidence, since the pieces of scantling sawed from the braces for the stock were left in the car; in fact, some were found in the car after its arrival at Commerce. The piece found near Mrs. Balthrop and which the jury found struck her was similar in length, dimension, and character with those in the car. Mrs. Balthrop alone testified as to what struck her, and, while she does not know what dealt her the "blasting lick," she positively states that the train did not, in fact, maintains that she was following the path at a safe distance from the train in a collected manner; and it was in evidence that the road was rough at the place of accident, and it was not uncommon for substances such as coal to be thrown from appellant's cars. Such

facts, together with the conceded custom of appellant's agents to inspect all loaded cars in anticipation of such accidents, tend, in our opinion to support, rather than dispute, the conclusion that such eventuality was not only not impossible as being in conflict with proven and recognized natural and physical laws, but probably such as would result.

[6] Under the second assignment of error appellant complains of the court's refusal to direct the jury, in effect, that, if Mrs. Balthrop could have traveled another way as near and in as good condition as the pathway, but nevertheless voluntarily selected the one she did, she could not recover. In our opinion, the special charge was properly refused. The court did instruct the jury that, if Mrs. Balthrop's failure to select another route or the taking of the route she did while the train was passing or by walking dangerously close to the moving train contributed to her injuries, to find for appellant. The charge requested by the appellant would have made it contributory negligence for Mrs. Balthrop to have been upon the track at all, if there was another route as near and as good, regardless of what produced her injuries. Such is not the rule with reference to licensees, except when the injury results from the inherent dangers of the premises. Further, whether she was negligent in selecting the route she did was for the determination of the jury, from whose consideration the requested charge would not only have withdrawn that issue, but would have had the effect of instructing the jury that her presence on the pathway was in law contributory negligence precluding recovery. St. L. S. W. Ry. Co. v. Samuels, 103 Tex. 54, 123 S. W. 121.

[7] The third and fourth assignments criticise the court's action in refusing appellant's special charge, and in giving the main charge relating to the condition of appellant's tracks at the point where Mrs. Balthrop was injured. By the main charge the jury were told, in effect, that, if the shippers of the live stock left pieces of scantling in the car while crating the live stock, and that a piece of such scantling was thrown from the train by its motion and the rough condition of its tracks, due to low joints, and injured appellee's wife, and appellant, by the exercise of ordinary care, could have discovered the pieces of scantling and thereby avoided the injury, to find for appellee. The criticism of the charge is that it imposed upon appellant the duty of keeping its tracks in a safe condition for licensees upon the pathway upon its right of way, while the special charge which the court refused advised the jury that there was no such duty imposed by law upon appellant. We concede the correctness of the rule announced by the special charge, but conclude that the court's charge is not susceptible of the construction placed upon it by counsel for appellant. In unmistak-

able terms the jury by the special charge was told that appellee could not recover, unless the shippers left the pieces of scantling in the car, and that one of them was thrown therefrom and struck appellee's wife, and that, by the exercise of ordinary care, appellant could have discovered the scantling before leaving the station, which is as favorable to appellant as it should have been. That portion of the charge which refers to the motion of the train and the rough condition of appellant's track is precisely what appellant complains of, but does not, we believe, in any respect impose the burden asserted, since it but authorizes the jury to find that the sequence which followed the original act of negligence in leaving the pieces of scantling in the car was set in motion by the movement of the train and the rough condition of the track. Proof of the rough condition of the track at the point of accident and the fact that the train was in motion was clearly admissible, as tending to explain the ejection of the scantling from the car. Such facts were proven, and are, in effect, all the evidence offered in explanation of how the scantling was hurled from the car. Thus, in effect, the case, so far as related to appellee's right to recover, was by the charge complained of submitted upon special issues, first, as to whether the scantling was left in the car, and, second, whether it was hurled from the car, due to the motion thereof and the rough track, and we conclude there was no error in such submission as tending to impose a burden upon appellant not contemplated by law. Further, the court withdrew from the consideration of the jury all negligence, except that of leaving the scantling in the car when it told the jury at the request of appellant to find against appellee, unless they believed from the evidence "that a person of ordinary prudence would have discovered * * * the timber in the car, * * * and would have removed the same therefrom," which made it clear beyond intelligent dispute that the right to recover depended solely upon whether there had been left in the car, as alleged, the pieces of scantling. And, finally, at no place in the charge is the jury told that appellee could recover because of the unsafe condition of the track, nor was such claim asserted in the pleading, but the entire controversy is made to revolve around whether the timbers were left in the car or not.

[8] There are several assignments of error that complain of the admission of testimony concerning the rough condition of appellant's tracks and the motion produced thereby and the tendency of such motion to hurl objects from the car, which we conclude should be overruled, for the reason, just stated, that such testimony was admissible in explanation and proof of how the piece of scantling was thrown from the moving train.

There are also other assignments which in

a different manner present the same issues which we have already considered, and which are for that reason overruled.

Finding no reversible error in the record, the judgment is affirmed.