Argued July 8, reversed July 28, 1914.

## DOYLE *v.* PORTLAND RY., L. & P. CO.*

(143 Pac. 623.)

**Railroads—Operation—Injuries to Persons on Track—Licensees or Trespassers.**

1. Where many people, in a thickly settled community, have been accustomed every day for several years to use a railroad bridge as a foot passageway, with the knowledge and acquiescence of the railroad company and its employees, persons using such bridge in accordance with the usage are not trespassers, but are licensees, and the railroad company is bound to use reasonable care in the management and running of its trains to protect them from injury.

**Railroads—Operation—Injuries to Persons on Track—Lookout.**

2. While a railway owes no duty to keep a lookout for ordinary trespassers, it is bound to keep a lookout for persons on the track with the license or invitation of the company, express or implied, and to exercise ordinary care to discover them, no less than to avoid injuring them after discovering them.

**Railroads—Operation—Injuries to Persons on Track—Effect of Notice.**

3. If, after the posting of a notice forbidding trespassing on a railroad bridge, the people continue to use it as a footway with the knowledge of the railroad and without its making any objection, a jury may properly find that the company acquiesced in such use, notwithstanding the notice.

**Railroads—Operation— Injuries to Persons on Track — Actions — Instruction.**

4. Where there is evidence that a railroad acquiesced in the use of a bridge as a footway by the public, an instruction requiring of the railroad only the lowest degree of care for the protection of a person on the bridge was error.

From Multnomah: THOMAS J. CLEETON, Judge.

This is an action by William C. Doyle against the Portland Railway, Light & Power Company, a corporation, for damages on account of personal injuries

---

*On the question of posting signs warning trespassers as affecting liability of railroad company for injury to person walking on track, see note in 47 L. R. A. (N. S.) 506.

As to the duty toward trespassers or persons on railroad track, see note in 36 L. Ed. 1064.

Upon the duty to maintain lookout for persons on railroad tracks, generally, see notes in 25 L. R. A. 287; 8 L. R. A. (N. S.) 1069, and 41 L. R. A. (N. S.) 264.                                REPORTER.

received by reason of alleged negligence.  A verdict
was returned on which judgment was rendered in
favor of the defendant, and plaintiff appeals.  The
facts are sufficiently stated in the opinion.

Reversed.

For appellant there was a brief over the names of
*Mr. Shirley D. Parker* and *Messrs. Littlefield & Smith,*
with an oral argument by *Mr. Isham N. Smith.*

For respondent there was a brief over the name of
*Messrs. Griffith, Leiter & Allen,* with an oral argument
by *Mr. Rufus A. Leiter.*

Department 1.  Mr. Justice Ramsey delivered the
opinion of the court.

This is an action to recover damages for personal
injuries, based on alleged negligence of the defendants.
The  action was dismissed as to the Oregon Water
Power & Railway Company, and it proceeded against
the Portland Railway, Light & Power Company.  The
trial resulted in a judgment against the plaintiff.  The
latter appeals, and  the  last-named  company is the
respondent.

The complaint, an answer, and a reply were filed.
The errors assigned relate to the instructions given
by the court and to those refused; but we will consider
only certain of the charges that were given and ex-
cepted to.

At the time of the accident complained of, and for
several years prior thereto, the defendant, the Port-
land Railway, Light & Power Company, was engaged
in running and conducting an electric railroad for car-
rying persons and freight, and the mail as a common

71 Or.—37

carrier, from the city of Portland to Estacada, Oregon. The complaint alleges, *inter alia,* the following:

"As part and parcel of the system of electric railroads and railways so owned and operated by defendant, the defendant operated a railroad between Portland, Oregon, and Estacada, as above stated, and along the right of way thereof was a high and dangerous trestle, approximately 40 feet in height and about 80 yards long, extending over and across Johnson Creek, between Berkley and Ardenwald stations, and that said railroad was so constructed that it constituted and was the sole and only means and method of transportation and of crossing over the said creek, and that in the vicinity of said trestle there is a populous settlement, and that the people residing in the vicinity thereof from the date of the construction of said trestle, thence hitherto, have used said trestle as a footpath or passageway or crossing over and across said creek, and have used the same frequently at various hours of each and every day, and the said trestle constituted and was a pathway or passageway ordinarily and customarily used by the public without objection on the part of the said defendants, and of such customary and public use the said defendants and each of them well knew prior to the happening of the injuries to the plaintiff."

The complaint then describes the general character of the approaches to the trestle, and alleges knowledge of the defendant of the use by the people, and proceeds:

"On January 29, A. D. 1913, at about the hour of 6 o'clock P. M., this plaintiff, together with his wife, was lawfully traveling upon said trestle and using the same as a footpath for lawful purposes, and for crossing the said creek, and was proceeding with due care and caution to cross said trestle, and had traveled approximately three quarters of the distance across said trestle, going in an easterly direction, whereupon one of the trains so operated by the defendants

as a part and parcel of their system of electric railway lines approached said trestle at a high and a dangerous and excessive rate of speed, and at a rate greater than that usually attained by the trains of the said defendants in approaching and crossing said trestle, at a rate of approximately 40 miles an hour. That the name of the conductor in charge of said train is not known to plaintiff. The number of said train is not known to plaintiff. After said train had entered or passed the cuts in its approach to the said trestle, the operatives thereof had a clear and unobstructed view and vision of this plaintiff and his said wife, and realized the danger in which plaintiff and his wife were and the dangers to which they were exposed, and thereafter and after said operatives so in charge of such train had realized the danger to which plaintiff was exposed, the said operatives had full time and opportunity to have stopped the said train and have saved this plaintiff from the injuries hereafter described, but that said operatives carelessly, recklessly, and negligently failed to control the said train, but, on the contrary, ran the same at a high and a dangerous rate of speed and collided with this plaintiff, causing plaintiff the injuries hereafter stated. Plaintiff realized a train was approaching while he and his wife were on the trestle, and placed his wife in a place of safety, and could not himself get to a place of safety before being struck by the train. At said time and place, and after said operatives had time and opportunity to have stopped said train and prevented the injuries to plaintiff, as above alleged, the said train collided with this plaintiff with great force and violence," etc.

The evidence shows that the plaintiff and his wife had been working in a mill a short distance west of the trestle across Johnson Creek, referred to in the complaint, and that they lived a short distance east of said trestle. They quit work a short time before 6 o'clock P. M., but were too late to take a car going

east, and hence decided to walk home. The only convenient way across Johnson Creek was the defendant's bridge and trestle, crossing said creek. They had used this bridge as a passageway frequently prior to that time. They decided to walk over it. It was about 6 o'clock P. M. when they reached the bridge. They had gone about three fourths of the distance across it, when they discovered the defendant's car, only a short distance away, running at a high rate of speed. The plaintiff assisted his wife to get out of the way of the car, but did not have time to get off the bridge himself, and he was struck by the car and knocked off the bridge, and fell to the ground, a distance of about 30 feet. He was seriously injured, and rendered unconscious for several days. The car did not stop until it had passed over the bridge and beyond the point where it struck the plaintiff. This bridge is 176 feet long. The motorman says that he saw the plaintiff and his wife when the car was 20 or 30 feet from the end of the bridge, and he claims that he did all that he could to stop the car and prevent the accident. Witnesses for the defendant testified that the car could be stopped while going a distance of 90 feet after the brakes were applied.

There was evidence tending to prove that, with the aid of the headlight, the motorman could see a person in front of the car when 200 or 300 feet distant from him. The evidence shows that a considerable number of people reside in the vicinity of said bridge, and that said bridge had been constantly used for several years prior to the date of the accident, by numerous persons, as a passageway over Johnson Creek for pedestrians, and that school children and others had so used it. The evidence tends strongly to prove that the defendant and its servants knew of this use and

acquiesced therein. The defendant had placed at each end of said bridge the following notice: "No Thoroughfare. This is Private Property. Trespassing Hereon Forbidden." There was sufficient evidence tending to show that said bridge had been and was used by the public as a passageway for pedestrians, to make it necessary for the trial court to instruct the jury as to the degree of care that the defendant should have used in approaching and passing over said bridge with its cars.

The plaintiff contends that the injury to him was caused by the negligence of the defendant and its employees in running its car when approaching said bridge, and in not stopping it before the car reached him, etc. He claims, also, that if the defendant's employees had used proper care, and had kept a proper lookout, they could and would have seen him when at a considerable distance before reaching said bridge, and in ample time to have stopped said car before reaching him, etc. The defendant, on the other hand, contends that the injury to the plaintiff was the result of an unavoidable accident or of the negligence of the plaintiff. These were questions to be determined by the jury, from the evidence, under proper instructions from the trial court.

The plaintiff contends that the instructions were too long and that they were given in such a manner that they tended to confuse the jury. The instructions given comprised 23 typewritten pages. We think that the criticism of the plaintiff is not wholly without foundation. The court gave the jury lengthy instructions, and then gave numerous charges that were requested by the parties. In some instances, the court read charges to the jury, telling them which party had requested them, and then informed the jury that it had

modified said charges, and then read the modified
charges to the jury. Under such conditions it is hardly
probable that the jury could remember the differences
between the charges as they were first read, and as
they were in their modified forms. Such practice
tends to confuse the jury, as they are not likely to be
able to separate the chaff from the wheat.

The writer of this opinion believes that it is the
better practice for the trial court to examine the
charges requested, and to make such changes therein
as are deemed necessary, and then to give all the in-
structions as the charge of the court, without inform-
ing the jury, or saying in their hearing, that certain
parts are requested by the plaintiff and other por-
tions by the defendant. The trial judge, by adopting
requested charges, makes them his own, and all the
charges given should be given in such a manner that
the jury will understand that they are the instructions
of the court, and have the court's full approval and
authority. If the jury is informed that parts of the
instructions came from counsel, that fact is likely to
lessen the effect that would otherwise have been ac-
corded to them. However, these are mere sugges-
tions.

1. Where a considerable number of people, in a
thickly settled community, have been accustomed every
day for several years to use a railroad bridge as a foot
passageway, with the knowledge and acquiescence of
the railroad company and its employees, persons using
such bridge in accordance with such usage are not tres-
passers, but are licensees, and the railroad company
owes to them the duty of reasonable care in the man-
agement and running of its trains to protect them
from injury. 25 Cyc., page 642, says:

"When the owner of land, with full knowledge of the facts, tacitly permits another repeatedly to do acts upon the land, a license may be implied from his failure to object."

18 Am. & Eng. Ency. Law (2 ed.), page 1133, says:

"When one sees another exercising rights in his land, and says nothing, this fact should go to the jury in connection with others tending to show a license. A license may arise from merely permitting another to do certain things repeatedly."

In *Driscoll* v. *N. & R. Co.*, 37 N. Y. 637 (97 Am. Dec. 761), the court says:

"The intestate was not a trespasser, whether killed when he was on the defendants' land, or on the land whereof the fee belonged to his employers. The habitual use of the footpath across the quarry lots for many years, without objection, warrants a finding of license from the defendants to cross their land to go to his house."

In *Teakle* v. *San Pedro etc. Co.*, 32 Utah, 276 (90 Pac. 402, 10 L. R. A. (N. S.) 486), part of the syllabus is:

"Where, for a considerable period of time, numerous persons had been accustomed to walk along or across a railroad track in a populous city, such persons were licensees, whose presence the railroad train operatives were bound to anticipate and observe a reasonable lookout in order to prevent injury to them, when their attention was not directed to the performance of other duties."

In *Anderson* v. *G. N. R. Co.*, 15 Idaho, 523 (99 Pac. 94), the court says:

"On the other hand, there is a large and, * * we think, better considered line of authorities to the effect that, without regard to the question whether the person killed or injured was or was not a trespasser or a

licensee upon the track of the company, the company is bound to exercise special care and watchfulness at any point upon its track where people may be expected on the track, *or where the roadbed is used constantly by pedestrians.*"

In *Virginia Mid. R. R. Co.* v. *White,* 84 Va. 500 (5 S. E. 575, 10 Am. St. Rep. 874), the court *inter alia,* says:

"There is no other footpath from the house, nor, indeed, from the railroad bridge to the depot, than over these [railroad] tracks, which, it seems, have been used for years by pedestrians going from the Field house and other places in its vicinity to the depot and other business portions of the city. This user by the public has been with the acquiescence of the company. Without passing over the ' tracks, the Field house is virtually inaccessible. * * The deceased (who was killed on the railroad track) was not a trespasser, but a licensee; and, whatever duty a railroad company may owe to a trespasser on its track, * * *a different rule applies to a licensee.* As to the latter, the rule is that the company is bound to exercise ordinary care and prudence toward him, for the license creates this duty."

In *Troy* v. *Cape Fear etc. R. R.,* 99 N. C. 298 (6 S. E. 77, 6 Am. St. Rep. 521), part of the syllabus is:

"Where the public for a long series of years has been in the habit of using a portion of the track of a railroad company for a crossing, the acquiescence of the company will amount to a license, and impose on it the duty of reasonable care in the operation of its trains, so as to protect persons using the license from injury."

In *Byrne* v. *New York, C. & H. R. R. Co.,* 104 N. Y. 362 (10 N. E. 539, 58 Am. Rep. 512), a part of the syllabus is:

"Where the public for a long period of time have notoriously and constantly been in the habit of cross-

ing a railroad at a point not in a traveled public highway, with the acquiescence of the railroad corporation, this acquiescence amounts to a license, and imposes a duty upon it, as to all persons so crossing, to exercise reasonable care in the running of its trains, so as to protect them from injury.''

In *Davis* v. *Chicago & N. W. R. Co.,* 58 Wis. 646 (17 N. W. 406, 46 Am. Rep. 667), the court reviewed the authorities on this question, and a part of the syllabus is:

''If the right of way of a railroad company has been constantly used by the public for purposes of travel on foot, with its knowledge and acquiescence, a person so using the same is not a mere trespasser, but is a licensee, and the company will be liable for an injury to him caused by the negligent act or omission of its servants. The statute (Rev. Stats., § 1811) making it an offense to walk upon the track of a railroad does not alter the rule.''

In *Clampit* v. *Chicago, St. P. & K. C. Ry. Co.,* 84 Iowa, 74 (50 N. W. 673), the court says:

''The defendant and the railroad company owning the track, having through their employees and officers knowledge of the use of the footpath crossing, and having made no objections thereto, nor erected fences, walls, or other obstructions to such use, will be presumed to assent to it, thus giving all who use the crossing license therefor. The plaintiff, therefore, was not a trespasser upon the railroad track, but is entitled to all the rights and protection of one rightfully upon it with the license of the defendant.''

In Volume 2, Section 1725, of his Commentaries on Negligence, Mr. Thompson says:

''When the public for years have been accustomed to cross the track of a railway company on a well-defined path, with the acquiescence of the company, although without its express license, a license to do so

will be presumed, and persons so crossing to and fro are not in a strict sense trespassers, but are licensees, and the company is bound to take reasonable precautions to avoid injuring them.''

In *Cassida* v. *Oregon R. & N. Co.*, 14 Or. 557 (13 Pac. 441), the court said:

''I think that the fact that persons were liable to be on a railroad track at a particular locality where the train is to pass, if known to the managers of the train, or they have reasonable grounds to expect it, whether such persons are there rightfully or wrongfully, would impose a duty upon them they would not ordinarily be under in the conduct of the business.''

Other authorities sustaining the position that we take in this case could be cited, but we have quoted enough to show that our conclusions are sustained by many authorities.

There are many cases that take an opposite view of this question, but authorities ''should be weighed, not counted.'' It seems to us not to be reasonable or consonant with a proper regard for the protection of human life and limb to hold that the demands of travel and commerce are so pressing and urgent as to be superior to the safety of men and women, and require that persons passing over railroad bridges, where they have habitually passed for years, with the knowledge and acquiescence of the company, should be treated as mere trespassers.

A sense of justice seems to us to require that, where people have habitually and constantly, for a number of years, used a railroad bridge as a passageway for pedestrians, with the knowledge and acquiescence of the company, persons so using said bridge should be held to be licensees, and not trespassers, and entitled

to receive from the company reasonable care and diligence for their protection from injury.

If, in this case, the people have been accustomed to use constantly for years the railroad bridge referred to as a footpath, to enable them to cross Johnson Creek, and they had done this with the knowledge and acquiescence of the defendant and its employees, they were not trespassers, but licensees, and it was the duty of the company, in running its cars over said bridge and in approaching the same, to use reasonable care and prudence to prevent injuries to persons so using said bridge.

2. Mr. Thompson, in Section 1725, Volume 2, of his Commentaries on Negligence, says:

"We have seen that toward ordinary trespassers on railway tracks the general doctrine is that the railway company owes *no duty to keep a lookout,* though judicial opinion is not uniform on this question; but when persons are upon a railway track with the license or invitation of the company, express or implied, it is under a duty to keep a lookout for them, and to exercise ordinary care to discover them on the track, no less than to avoid injuring them after discovering them."

We approve this citation from Thompson.

3. The court below tried the case upon a wrong theory, and it was of the opinion that, if the people had habitually and constantly for years used the railroad bridge as a passageway for pedestrians, with the knowledge and acquiescence of the company, they were not licensees, but were trespassers thereon, and entitled only to the rights of trespassers. This is shown by several charges that were given to the jury, and by the refusal to give others. The court took that view in giving the following charge, which we hold to be erroneous:

"Now, in this case the company had a right, of course, to the free and unobstructed use of its own private right of way. I mean by that, the railroad line over which its cars run; and any person who went upon that right of way without its consent, of course, went there wrongfully, and would be a trespasser upon that right of way. The trespass signs that were put up there, if there were any put up there—and you must be the judges of the testimony—would be put there, if they were put there, to serve as notice to pedestrians, simply as a warning or as a claim of the company that they claimed that as a private right of way, and any one who went upon this right of way the law assumes they went upon there knowing that this was a private way, and that they thereby became trespassers upon the property of this company."

The trespass notices were competent evidence to be considered by the jury on the question whether the company acquiesced in the use of the bridge by the people as a footpath; but they were not at all conclusive on that point. We believe that the evidence did not show when they were posted. If, after said notices were posted, the people continued to use said bridge as a footway, with the knowledge of the defendant and its employees and without the company's making any further objection thereto, a jury might properly find that the company acquiesced in said use, notwithstanding the posting of said notices. The question whether the defendant acquiesced in said use or impliedly consented thereto was for the jury to determine.

4. The trial court's theory was that the plaintiff and all who used the defendant's bridge as a footway were trespassers, and it was error in the court to give the following charge:

"What the court means to say by this is that, if a person is a trespasser upon a track, he is not entitled to that degree of care that a person would require that

was not a trespasser. * * A trespasser does not require as high a degree as a pedestrian who might be walking along a track, where he would not be a trespasser, for instance. A trespasser is a person who would require the lowest degree of care in order to protect his rights from the defendant.''

According to the trial court's theory, the plaintiff was a trespasser, and entitled to the *lowest degree* of care for his protection. This was error. If the plaintiff was a licensee, and not a trespasser, upon the defendant's bridge, he was there lawfully and entitled to all the care and protection that any person lawfully there was entitled to. As shown *supra,* he was entitled to reasonable care and diligence from the defendant for his protection.

Several other charges that were given were erroneous, and some that were requested should have been given. As to the care that the plaintiff was entitled to at the hands of the defendant, when he was upon said bridge, the charges given by the trial court are somewhat inconsistent with each other. As a new trial will be granted, for the reasons stated *supra,* it is not necessary to discuss the instructions further.

We find that there was prejudicial error in the proceedings of the court below. The judgment of the court below is reversed, and a new trial is granted, to be conducted in accordance with this opinion.

REVERSED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE MOORE concur.

MR. JUSTICE BURNETT concurs in the result.