ATCHISON, T. & S. F. RY. CO. et al. v. SHADDEN. (No. 549.)*

(Court of Civil Appeals of Texas. El Paso. April 13, 1916. Rehearing Denied May 4, 1916.)

1. RAILROADS ⬅➡398(1) — INJURIES NEAR TRACK—SUFFICIENCY OF EVIDENCE.

In an action for personal injuries received while walking along a street beside a railroad track, evidence *held* sufficient to support a finding of the jury in favor of the allegation of the plaintiff's petition that some object, the nature of which was unknown to the plaintiff, projected over the side of a car and struck him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1363; Dec. Dig. ⬅➡398(1).]

2. RAILROADS ⬅➡398(1) — INJURIES NEAR TRACK—SUFFICIENCY OF EVIDENCE.

In an action for personal injuries received while walking along a street beside a railroad track, evidence *held* sufficient to support a jury finding that the plaintiff was struck while walking clear of the cars.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1363; Dec. Dig. ⬅➡398(1).]

3. RAILROADS ⬅➡400(10) — INJURIES NEAR TRACK—QUESTION FOR JURY.

In an action for personal injuries received while walking along a street beside a railroad track, the plaintiff being safe, except for a projecting object on one of the cars, whether he was guilty of negligence *held* for the jury under the evidence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1377; Dec. Dig. ⬅➡400(10).]

4. RAILROADS ⬅➡396(1) — INJURIES NEAR TRACK — CONTRIBUTORY NEGLIGENCE — PRESUMPTION.

In an action for personal injuries received while walking along a street beside a railroad track, there being no contention that the plaintiff was on the track, or in any sense a trespasser, but was traveling along a well-traveled trail, there could be no presumption of negligence on his part because he did not walk elsewhere.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1341–1343; Dec. Dig. ⬅➡396(1).]

5. RAILROADS ⬅➡398(1) — INJURIES NEAR TRACK—SUFFICIENCY OF EVIDENCE.

In an action for personal injuries received while walking along a street beside a railroad track, evidence *held* sufficient to support a jury finding that the defendant railroad was guilty of negligence in propelling its car along the street, so loaded that an object projected therefrom in such manner as to strike a person passing along where the company and its servants were charged with knowledge that persons were likely to be.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1363; Dec. Dig. ⬅➡398(1).]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Corbett S. Shadden against the Atchison, Topeka & Santa Fé Railway Company and another. Judgment for plaintiff, and defendant Rio Grande, El Paso & Santa Fé Railway Company appeals. Affirmed.

Turney & Burges, of El Paso, and Terry, Cavin & Mills, A. H. Culwell, and Jno. G. Gregg, all of Galveston, for appellant. Moore & Harris and T. A. Falvey, all of El Paso, for appellee.

HARPER, C. J. This was an action for personal injuries, wherein the plaintiff alleges that on or about May 17, 1914, he was walking along Third street, between Chihuahua and Santa Fé streets; that appellants had had a flat car standing on its tracks at said point for several days; that there was an object projecting far out beyond the edge of said car into said street on the southerly side, which object the defendant had negligently placed and allowed to remain on said car at said time, the nature of said object being unknown to plaintiff, but it was believed to be an instrument used for unloading cinders; that while in the exercise of due and ordinary care and while walking on said street an engine and train operated by defendants was attached to said standing car, and same without notice or warning was moved, and plaintiff was struck by said object projecting into the street beyond the side of said car, knocked down, and his right arm so mangled as to require amputation.

It was charged that the defendants were negligent in moving said car with such object projecting into the street and thereby striking and injuring the plaintiff, and in moving such car without giving notice or warning that it was going to move. Defendants answered by denying the material allegations of plaintiff's petition, and by plead-

---

ing contributory negligence of plaintiff in walking where he was at the time, and charging that he was a trespasser. There was an instructed verdict in favor of the defendant the Atchison, Topeka & Santa Fé Railway Company, and, in accordance with the jury. verdict and judgment were rendered against the defendant Rio Grande, El Paso & Santa Fé Railway Company in the sum of $9,000, from which judgment this appeal is prosecuted.

The first three assignments urge that the verdict and judgment are contrary to the evidence, contrary to law, and that a peremptory charge should have been given, as requested, for defendant:

(a) Because the evidence does not show that any object projected out into the street beyond the side of said car that could have caused the injury to plaintiff. (b) Because the evidence does not show that defendant was negligent in moving its said cars. (c) Because the evidence does not show any negligence on the part of the defendant that caused the injury. (d) Because the evidence conclusively shows that no one of defendant's crew operating its said train were guilty of any negligence that caused the injury to plaintiff. (e) Because the evidence conclusively shows that where plaintiff claims to have received his injury was on the south of the center of Third street, and all of which was open and unoccupied, and that plaintiff went so near the track that he was struck by a moving car; and that, if plaintiff had not gone so near said moving car so that he could be struck by same, he would not have been injured, because plaintiff could have passed on the other side of the street with safety to himself; and that if plaintiff had gone on any other part of the said street other than the part that he was on, he could not have received his injury. (f) Because the evidence conclusively shows that on the north side of said Third street the sidewalk was paved, and that if plaintiff had used said sidewalk, or any part of said street 40 feet south and parallel with said sidewalk, he could not have received his injury.

Annie Christopher testified for plaintiff:

"My name is Annie Christopher. I live in El Paso. On the 17th of May, 1914, I was stopping on the corner of Third and Santa Fé streets. There is a railway track running along the side of the house and fence next to the window of the house I lived in there. It stopped there on the corner of Third and Santa Fé. I remember the occasion of a soldier boy getting his arm cut off there on the 17th of May, 1914. I was sitting in my window at the time of the accident. I saw the soldier boy before he got to the place where he was injured. He had crossed Santa Fé and started on down Third street. There was a lot of flat cars standing there on that track, and the hind end had a scraper setting on it of some kind; I don't know what it was for. It was not attached to the car; it looked like it was standing or setting there on the flat and the rest of the flats run up further, six or seven of them. When the car left my window I was sitting right in the window. I had just been there three days, and the car was there when I went there. There was an elbow stuck out over the side of the car. That soldier boy came along and crossed over Santa Fé street and started down the side of the cars, the opposite side from where I was. I was sitting in the window on this side, and that throwed him on the outside of me. I was sitting there, looking under the car; it was high off the ground, and I could see clear up here (indicating just below the hips). He was walking beside the car. Nothing happened to the cars more than they put the engine to them and pulled them out. Yes; there was a noise; you could have heard it for a block or two. The man had come about middleways down the side of the car that had the scraper on it. That was the car next to my window. He was just walking along and it looked like the car might have struck him. The car had elbows on it, and one of them elbows struck the man; it just jerked out all at once and it must have struck him right along here (indicating side) because he seemed to fall on his back, and his arm was on the track under the wheel. I seen that. Where he was walking along there was where people usually walked. He walked on a path. I have seen plenty of men and women go there. It was a place used by the public in going from Chihuahua street to Santa Fé street along there and from Santa Fé street to Chihuahua street. That place where he was going along there was the place the people usually went, in going from Santa Fé street to Chihuahua street, and from Chihuahua street to Santa Fé street on Third street. Plenty of people went along there. I could see them all the time, going along there, women, men, and children, on account of the side of the car being high up. I was sitting in the window; I was setting this way in the window and turned this way and saw the man. I saw him under the car, and I saw the car jerk and heard a noise. * * * Nobody came down there and gave a signal that the train was going to move out. There was no notice given of any kind except the noise and the jerking of the car. I did not see any employé come back to the back of the train. There were no children playing around the car. I have one girl, a grandchild. I did not see any children there. I am positive that no notice was given. Nobody came around the car to see whether everything was clear or not."

Cross-examination: "The track was about two feet from the side of my house and fence. I first saw the soldier right there where he got hurt. That is the first place I saw him; I never paid no attention; I didn't know anything about him until he got hurt. The first place I saw the soldier was coming across that vacant lot right in front of my house, on that side of Santa Fé street, on the east side. He was going kinder south, coming right across Santa Fé and coming down Third street. The vacant lot is right in front of my house, and that made him come right to the corner of Santa Fé and Third, and down the side of the track. My face faced east and he had been coming northwest toward my house. The first time I saw him he was crossing that vacant lot to the east of Santa Fé street. I did not watch him. I next saw him at Santa Fé and Third street, from my window, and noticed him again, when he went down Third street, and I guess he turned back out again and it knocked him back like it did, is what I allowed; but I don't know any more about him than I do about you. I don't know what no distance is, but I know he was about middleway of that flat car when he was hit. I had been there only three days. I do not know when this flat car was put on the track there because it was there when I went there. When I saw this man on Santa Fé street out there I did not know whether the switching crew was out

there or not; it wasn't my business to watch after them. I don't know anything at all about that. When I heard that noise I was sitting outside the door with my feet in the house; the ground is level with the window there, and when I heard the noise it caused me to get further in the house. I was sitting sideways. The sill of the window is several feet above the floor. When I saw the man about middleway of the flat car I do not know where the switching crew was; I don't know a thing about them. I did not go outside until the man was hurt. I could see about up to there on the man's body (indicating just below hips) as he passed my window. It did not come up as high as his hips. I could not see his hands, his arms, his shoulders, or his neck when he passed me going that direction; he was not going facing me. When he got to the middle of the flat he is bound to have turned around, or it would not have knocked him down. I did not see him when he turned. I know he turned because I could tell the way he fell. I told you he turned around to come back this way and the car struck him about here (indicating on the arm); I seen him when he fell. He fell back this way. I seen him; looked like after the lick hit him he turned, but turned this way, and he done turned around when he got middleway that flat car, the car struck him and turned him right down to one side, down the side track. I done told you I seen him when he turned. When he got about middleway of the car I noticed his toes were this way, to me, and his heels were—I don't know whether he turned or not. but that is the way. I said he turned and started back. When he turned I could only see the front part of his legs; I could not see the back of them when they was from me. I could not see his hips, chest, his stomach, or his face. I don't know how many elbows were on that car; I'm no railroad man. I don't know how many there were. There was more than one; any flat car has more than one shoulder on it that way. The scraper reached to the middle of the car or further; it was about that distance from the end of it, and it come out this way, in a 'V' shape, and spread. The scraper was right on the edge of the car like that, and the elbows was sticking out that way. The scraper was even with the car on the side, and the elbows extended out a little bit from the sides of the car. If they happened to be little elbows they would be a little ways out, and if larger they were out farther. That is what I saw. I spent most of my time in the house; I got it to stay in. It was in May, kind of warm, and I stayed in the house most of the time, I was not doing anything but camping, and I had to move as soon as I could find a house."

Redirect examination: "The floor of my house there was below the level of the street. There is a pathway along where the soldier was walking at the time he was struck. They had a little path tramped out where the people had come down across the lot. Where he was walking along the side of the car was just a little path walked out in the sand there."

## Testimony of plaintiff, Shadden:

"My name is Corbett S. Shadden. I reside in Springtown, Atoka, Oklahoma. I am 22 years old. I am the plaintiff in this case. I was in the city of El Paso, El Paso county, in the state of Texas, on the 17th day of May, 1914. I was soldiering at that time. On that day I was not acquainted with a certain line of railroad owned and operated by the defendant, Rio Grande, El Paso & Santa Fé Railroad Company, running through said city on Third street to its intersection with Chihuahua street. I saw said railroad track on said 17th day of May, 1914. Yes; I was injured in said city of El Paso and on the 17th day of May, 1914, on Third street. My right arm was crushed, and later amputated about 5 inches from the shoulder, on the same day. I was walking on the north side of a flat car, and turned to go back, and an object projecting out in the street off the car struck me. I was going to camp; had come from town. The camp was located near the gas tank. The wheels of the car crushed my right arm. I did not see the object projecting out into the street from said car in time to get out of the way of it. I was walking along said street. * * * I was confined to the hospital by reason of my injuries, two months. I have suffered mental and physical pain by reason of my injuries ever since I was injured, quite a bit; the imagination of the nerve causes constant pain. I have not been able to earn a living since my injuries. I was discharged from the army by reason of my injuries. I enlisted in the army at Fort Logan, Colo., and before I enlisted I was a farmer. At the time of my enlistment I was earning about $30 per month. I am not earning anything now, and am not capable of earning anything in my crippled condition. My physical condition at and prior to my injuries was good; I weighed 137 pounds. I am five feet six inches and a quarter tall. I was not intoxicated at the time I received said injuries. I was not asleep on the track of the defendant's railroad at said time."

Cross-examination: "I reached El Paso with my company on the 28th day of April; I left there the 17th of July. On May 17, 1914, I was on duty, but was on legal pass. My company was encamped near the gas tank about eleven o'clock; my destination was town. I was alone at the time. I did not go anywhere except to a cigar stand, and then to the Y. M. C. A. The last place I stopped or visited before starting back to camp was at a cigar stand, which was north of my camp. I do not remember what streets I traveled in returning to camp. I have not read the original petition filed in this suit on August 26, 1914, signed 'Moore & Harris, T. A. Falvey, Attorneys for Plaintiff, Corbett S. Shadden,' but have read the copy furnished by my counsel. It states the facts as to how, when, and the point at which I received my injury. I was going in a westerly direction at the time of the injury. I reached Third street from the northern direction; I do not know the name of the street traveled on to reach Third street. I was not acquainted with any of the people living on Third street between Santa Fé and Chihuahua streets at that time. I do not know if the place at which I received my injury is nearest to Chihuahua street or to Santa Fé street, not being familiar with the streets. * * * I was carried to a hospital for treatment after receiving my injury. I was taken to the Fort Bliss hospital and Major Graves treated me, and a lieutenant; I do not remember his name. At the time I was injured the car was suddenly moved towards the west. I am acquainted with a negro woman by the name of Annie Christopher. I have never talked with her about my injuries. I am not acquainted with a negro man named John Foster. I never had any conversation with him. I pointed out the place where I was injured to my attorneys on the same day that I left, the 17th day of July. I had not been there previous to that time after I was injured. I was not assisted by any person or persons in locating the point where I was injured. I do not know the names of any one that assisted me from the point I received my injury at the time I was injured, as there were so many there. * * * At the time I was injured I was drawing $15 a month and expenses. I had not taken a drink of any intoxicating liquor on the morning or during the day of May 16, 1914. I had not acquired by purchase, gift, or otherwise any intoxicating liquor on May 17, 1914. It is

not a fact that I did take a drink with some of my fellow soldiers on the morning of May 17, 1914. It is not a fact that I took a drink with some civilians on the morning of May 17, 1914. I did not have any intoxicating liquors in my possession at the time I left camp on May 17, 1914."

These two are the only witnesses upon the trial who claimed to have witnessed the accident. Plaintiff testifies after he was struck he saw an object of some kind projecting from the top of the car into the street, and that this object is what struck him; and witness Christopher said there was a scraper on the edge of the car, and the elbows were sticking out a little bit from the sides of the car.

[1] This is sufficient to support the finding of the jury in favor of the allegation in plaintiff's petition that "some object, the nature of which was unknown to plaintiff, projected over the side of the car" and which struck him. In this connection, it is urged by appellant that the evidence showed that plaintiff unnecessarily went so near the track as to be struck by a moving car, when he could have gone on the other side of the street in safety to himself.

[2-3] The record makes the witness Christopher say that plaintiff was struck by a knuckle of the car, but the circumstances detailed by the witnesses indicate that the path along which he was walking was sufficiently removed from the track as to place persons walking thereon free from the moving cars; and further the uncontradicted testimony is that there was some object projecting out into the street from the top of the car. Taken together, these circumstances are sufficient to support the finding of the jury that plaintiff was struck while walking clear of the cars themselves; and, if the position he placed himself in was safe but for the projecting object, then it became a question for the jury as to whether he was guilty of negligence under the circumstances, and this has been resolved in favor of plaintiff by their verdict.

[4] There is no contention in this case that plaintiff was upon the track or, in other words, was in any sense a trespasser, but, on the other hand, was in a public street where he had a right to be, passing on and along a well-traveled trail, a trail usually traveled by pedestrians; therefore, there could be no presumption of negligence upon his part because he did not walk elsewhere.

[5] The negligence charged to the defendant by the pleadings and submitted by the court's charge is their act in propelling its car along a public street, so loaded as that an object projected therefrom in such manner as to strike a person passing along where the company and its servants were charged with knowledge that persons were likely to be, and, if there, likely to be injured. And we think the facts are sufficient to support the finding of the jury that the defendant company was guilty of such negligence as charged it with liability for the injuries complained of. M., K. & T. Ry. Co. v. Scarborough, 29 Tex. Civ. App. 194, 68 S. W. 196, G., C. & S. F. Ry. Co. v. Matthews, 100 Tex. 67, 93 S. W. 1068.

By its fourth assignment, it is charged that the court erred in refusing to give the following special charge, as requested:

"Now, if you believe from the evidence that the plaintiff went on, or so near, the track as to suffer injury by reason of being struck by a moving car, and in so doing was guilty of negligence, or that the plaintiff could have passed on the other side of the street with safety to himself, and that in being on that portion of said street where he was at the time he was injured, if he was injured on said street, under all the surrounding facts and circumstances appearing in evidence, was guilty of negligence, and either or both of such negligent acts or omissions combined, if plaintiff was guilty of negligence in either or both such particulars, proximately contributed to cause plaintiff's injury, then your verdict must be for the defendant."

The following is incorporated in the main charge:

"Now, if you believe from the evidence that the plaintiff went on or too near the track of the defendant, and in so doing was guilty of negligence, or that the plaintiff could have passed on the other side of the street with safety to himself, and that in being on that portion of said street where he was at the time he was injured, if he was injured on said street, under all the surrounding facts and circumstances appearing in evidence, was guilty of negligence, and either or both of such negligent acts or omissions combined, if plaintiff was guilty of negligence in either or both such particulars, proximately contributed to cause plaintiff's injury, then your verdict must be for the defendant"

—which sufficiently covers the points at issue. It was therefore not error to refuse the special charge.

By its fifth assignment, it is urged that the verdict is excessive. We do not so conclude. The evidence shows that, at the time of the accident, plaintiff was 22 years old, capable of earning $30 per month as a farm hand; that as a result of the accident he lost his right arm, it having been amputated about five inches from the shoulder; that he was confined to the hospital for two months; that he had suffered mental and physical pain ever since the accident; that prior to the accident his physical condition was good, etc. See evidence quoted at length above. Ry. Co. v. Scarborough, 29 Tex. Civ. App. 194, 68 S. W. 196.

Finding no error in the record, the cause is affirmed.