[L. A. No. 9567. Department Two.—January 29, 1929.]

MARION R. SMITHWICK, a Minor, etc., et al., Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

Frank Karr, E. E. Morris, C. W. Cornell and Forrest A. Betts for Appellant.

Geo. W. Rochester, Frank P. Doherty and W. C. Mathes for Respondents.

SHENK, J.—This action was brought by Marion R. Smithwick, a minor, by Marion A. Smithwick, his father, as his guardian *ad litem*, and by Marion A. Smithwick, in his personal capacity, for damages resulting from an accident wherein the minor plaintiff was injured by a freight train of the defendant company. The jury returned two verdicts, one for the minor in the sum of $6,000 on account of the personal injuries suffered by him and one for $735 in favor of the father on account of medical and surgical attention

and hospital care. From the judgments entered pursuant to said verdicts the defendant has appealed.

The minor plaintiff was about four and one-half years of age at the time of the accident. He suffered an injury by which his leg was cut off by the wheels of the defendant's moving train. The injury occurred about noontime on March 19, 1925, on the defendant's private right of way running in a straight line east and west between Grand Avenue and Hope Street in the city of Los Angeles. A vacant lot, contiguous to the northern boundary of the right of way and bounded on the west by Hope Street, on the north by Thirty-fifth Street and on the east by a spur-track running from the right of way to the May Company's warehouse, had been used by children as a playground for five or six years continuously next preceding the time of the accident. Employees of the Birch-Smith Company, whose warehouse joined the southerly boundary of the defendant's right of way at Grand Avenue, also used the playground during the noon hour for the game of base-ball. To get to the playground the employees crossed over the private right of way at a point about equidistant between Grand Avenue and Hope Street. It was in evidence that children often crossed and came upon the private right of way for the purpose of recovering balls; that each year there was at least one well-defined footpath crossing the right of way, but that its location might not be the same in every year; that a well-defined footpath extending from the playground and crossing the right of way existed at the time of the accident; that several other but less defined paths were made through the weeds and across the tracks; that there were well-worn footpaths parallel to the tracks along the right of way on the north and on the south sides of the tracks, and that children and adults had crossed the right of way over these paths daily for about six years.

On the day of the accident a freight train of twenty-three cars comprising flat cars, "gondolas" and box-cars, attached to a motor which was at the head end, was operated by defendant's employees from Culver Junction eastbound for the Butte Street yard of the defendant. As the train was crossing Hope Street from the west and approaching Grand Avenue, and going at a rate of ten miles an hour, the minor plaintiff and another boy about the same age were seen

coming from the playground and running toward the train. After the motor had passed the minor plaintiff he changed his course and ran along parallel with the train and in the same direction in which it was moving. He was picked up with one of his legs cut off and with other minor injuries. The foregoing was established by practically undisputed evidence. There was additional evidence that the minor plaintiff was struck from the back by a rod, truss, beam or other object which protruded several feet from one of the cars, which, as it passed near the boy, hit him on the back of the head and knocked him under the wheels. One witness testified that he was in his automobile on Grand Avenue on the north side of the passing train waiting to cross the right of way when he saw the two children near the tracks; that they were far enough from it for safe clearance; that he saw something "hit the smaller boy on the head and turned him around and knocked him under the train"; that he looked at the train as it continued to pass to see what had struck the boy and saw that "something was hanging," protruding about four feet from the car and downward; that he could not make out exactly what the object was; but that he thereupon immediately ran to the child's assistance. The minor plaintiff himself testified that something struck him on the back of the head. It was in evidence that the boy was about fifteen feet east of the crosspath and four or five feet north of the track when he was picked up. The defendant's train crew testified that the train was examined at Culver Junction and no truss or beam or other object was sticking out from the side of the car; that when they arrived at the Butte Street yards, which was about fifteen or twenty minutes after they passed Grand Avenue, they received a telephone message concerning the accident; that they examined every car carefully to find any protruding object, but found none; that at the time of the accident the conductor and all the crew except the rear brakeman were forward and that the rear brakeman was in a "gondola"—a box-car without a roof—which was next to the rear car. The trainmen testified that they did not see the boy at any time and did not know of the accident until they received the telephone message on arriving at the Butte Street yards.

The defendant assigns as error the refusal of the trial court to grant its motions for a nonsuit and for a directed verdict; also the giving of certain instructions and the refusal to give certain requested instructions. The defendant contends that as a matter of law the defendant was not negligent because at the most the minor plaintiff was a mere licensee and the duty of care owed to a licensee by the owner of private premises is no greater than that owed to a trespasser, viz.: a duty not wantonly or wilfully to injure him. It is insisted that this court has refused to recognize any distinction between a mere licensee and a trespasser, citing *Means* v. *Southern California Ry. Co.,* 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001]; that the duty owed a licensee on defendant's right of way is the same as that owed a trespasser and that there is no duty therefore to discover the plaintiff, but the duty arises only after discovery to use due care to avoid injuring him (see *Green* v. *South San Francisco R. R. etc. Co.,* 181 Cal. 392 [184 Pac. 669]; *Toomey* v. *Southern Pac. R. R. Co.,* 86 Cal. 374 [10 L. R. A. 139, 24 Pac. 1074]; *Tennenbrock* v. *Southern Pac. Coast R. R. Co.,* 59 Cal. 269, 271, citing *Maumus* v. *Champion,* 40 Cal. 121); and that the defendant owes no greater duty to discover infant trespassers than it does to discover adult trespassers, citing mainly *Felton* v. *Aubrey,* 74 Fed. 350 [20 C. C. A. 436], and *Palmer* v. *Oregon Short Line,* 34 Utah, 466 [16 Ann. Cas. 229, 98 Pac. 689]. It is also contended by the defendant that there was no negligence shown in the operation or maintenance of the train because it did not appear that there was anything out of the ordinary in its operation nor did defendant know that any beam projected from one of its cars.

On the other hand, the plaintiffs rely on *Hansen* v. *Southern Pacific Co.,* 105 Cal. 379 [38 Pac. 957], as determinative of the issues presented on this appeal and as an authority for instructions Nos. I and IV given by the trial court in the present case and objected to as erroneous by the defendant.

In the Hansen case a boy of seven years had his foot caught in a defective cattle-guard while he was crossing the tracks on a footpath when the defendant's train ran over his foot, necessitating amputation. The engineer testified that he saw the boy on the track in sufficient time to have

stopped the train, but did not realize his inability to remove himself from the tracks until too late to avoid the injury. The trial court left two issues to the jury: 1. That if the "defendants permitted and consented to the use of their tracks and right of way by the public for the purpose of travel along and across the same at the place where the cattle-guard was maintained and that the plaintiff was so using the track . . . at the time the injury occurred, then . . . the plaintiff was not a trespasser and the defendant owed him a duty not to obstruct the track and right of way with a dangerous contrivance; and if you further find that the cattle-guard was a dangerous trap, and the defendant knew or ought to have known that it was dangerous," the plaintiff was entitled to recover on the first cause of action if he was without fault on his part; and 2. On the second cause of action, if "plaintiff was upon the track by the consent and permission of defendants, then they were bound to exercise reasonable care in keeping a proper lookout and otherwise, and if they failed therein, and by reason of their negligence and without the fault of plaintiff he was injured, the jury should find for plaintiff, and that if plaintiff was not on the track or road by permission of the defendants, he was a trespasser and the defendants owed him no duty except to use ordinary care to avoid injuring him when they discovered him on the track, and if, under such circumstances they exercise such care the verdict should be for the defendants." On appeal from a judgment in favor of the plaintiff in that case, the court held that the issues by reason of the conflicting evidence were properly for the jury and approved the law stated in the instructions.

In the present case the defendant charges error in the refusal of the trial court to instruct the jury in effect that the defendant owed no duty to discover the minor plaintiff and no duty if he was not discovered except not *knowingly* to permit a beam or other object to extend beyond the side of the car; and in giving instead the following two instructions: "I. If you find from a preponderance of the evidence that the defendant permitted and consented to the use of its tracks and right of way by the public for the purpose of travel along and across the same at the place where the alleged accident occurred and that the minor plaintiff was so using the tracks and right of way at the

time the alleged accident and injury occurred, then I charge you that the minor plaintiff was not a trespasser and the defendant owed him a duty not to have or maintain any dangerous contrivance upon said right of way which would be likely to injure the minor plaintiff. I further instruct you that if you find from a preponderance of the evidence that the defendant's right of way and tracks had for a long period been used by the public as a footpath for travel with the knowledge of the defendant and without protest or objection from it, then you have a right to infer that such use of the tracks and right of way was with the acquiescence and permission of the defendant." "IV. The railroad company has the right to the exclusive use of its railroad tracks and right of way, free and clear of any use by others. It may relinquish such right of exclusive use, however, to the public, or to any class of persons, either by giving its express permission to such use by the public or other·persons or by its tacit or implied permission which may be established by circumstances such as knowledge of and acquiescence in its long continued use as a public passageway. If from a preponderance of the evidence you believe that the railroad company gave its permissive consent, directly or impliedly, or acquiesced in the use of its premises by the public or children, then the persons who entered upon said premises, if any, were not trespassers, but were licensees. The defendant did not owe to plaintiff the duty to be free from negligence but did owe plaintiff the duty not to knowingly maintain hidden traps or dangerous instrumentalities."

The defendant urges that the principles stated in the instructions quoted have been rejected by the case of *Means* v. *Southern California Ry. Co., supra,* and that the present rule in this state is that the defendant owes no greater duty to licensees than it does toward trespassers.

In the Means case it appeared that while the plaintiff was on the defendant's warehouse premises as a licensee for his own purposes and without invitation, he was injured by the bursting of a tank of sulphuric acid. The appeal was from an order granting a nonsuit. The court held applicable the general rule that a mere licensee takes the premises as he finds them and that there exists no duty on the part of the owner of private premises toward him except, as variously quoted from the cases cited in its opinion, to refrain

from wilful or affirmative acts which are injurious, or which wantonly or recklessly expose him to danger, or not to maintain a trap which would include any very dangerous construction or condition designedly arranged to do injury (see, also, *Giannini* v. *Campodonico,* 176 Cal. 548 [169 Pac. 80]; *Powers* v. *Raymond,* 197 Cal. 126 [239 Pac. 1069]; *Lindholm* v. *Northwestern Pac. R. R. Co.,* 79 Cal. App. 34 [248 Pac. 1033]; *Herzog* v. *Hemphill,* 7 Cal. App. 116 [93 Pac. 899]); and held as a matter of law that the record did not show a breach of the duty toward the plaintiff in keeping on the warehouse premises a tank of sulphuric acid in the condition in which it was shown to be at the time of the injury, and which did not appear to be in its nature essentially and inherently a dangerous agency.

There would seem to be no essential difference between the definition of the duty toward licensees by permission stated in the instruction covering the first cause of action in the Hansen case and the definition respecting the same duty stated by the court in the Means case. It will be noted that the instructions I and IV in the present case are predicated on the first instruction quoted from the Hansen case.

█ We cannot agree with the defendant's contention that the instructions here complained of incorporated the "attractive nuisance" doctrine of the turntable cases. The plaintiffs concede that the doctrine of attractive nuisances is not involved in this case, and the defendant's contention that the case was tried on that theory because of the form of the instructions is without merit on the record herein.

Research discloses that the rule of the Means case is uniformly accepted as the general rule defining the duty of the owner of private premises to mere licensees, who are sometimes called "Licensees by permission" as distinguished from licensees by invitation (see *Holstine* v. *Director-General of Railroads,* 77 Ind. App. 582 [134 N. E. 303]), and that the rule with reference to mere licensees is substantially the same as the rule respecting the duty which the proprietor owes to trespassers (see 45 C. J., p. 796 et seq.). But whether the duty is any greater toward persons who use, for their own convenience or purposes, the private right of way of a railroad company by its express or implied permission is a question on which the authorities are divided. We find that the rule suggested by the second instruction

quoted from the Hansen case, sometimes called the "intermediate rule" (see *Palmer* v. *Oregon Short Line R. Co.,* 34 Utah, 466, at page 480 [16 Ann. Cas. 229, 98 Pac. 689], citing *Hansen* v. *Southern California Co., supra,* and cases from other jurisdictions), and within which the members of the class are sometimes called "licensees by invitation," has been adopted in a number of jurisdictions. It is, in fact, an exception to the general rule of the Means case and is the application of the measure of ordinary care to persons entering private rights of way by permission, express or implied—a special class of licensees. The doctrine as to this class of licensees is stated generally by Mr. Thompson in his Commentaries on the Law of Negligence as follows:

"Where the public for years have been accustomed to cross the track of a railway company upon a well-defined path, with the acquiescence of the company, although without its express license, a license to do so will be presumed, and persons so crossing to and fro are not, in a strict sense, trespassers, but are licensees, and the company is bound to take reasonable precautions to avoid injuring them. . . . We have seen that toward ordinary trespassers on railway tracks, the general doctrine is that the railway company owes *no duty to keep a lookout,* though judicial opinion is not uniform on this question; but where persons are upon a railway track with the license or invitation of the company, express or implied, it is under a duty to keep a lookout for them and to exercise ordinary care to discover them on the track, no less than to avoid injuring them after so discovering them. The doctrine applies to *bridges,* as well as to paths across or upon the railway tracks at other places." (2 Thompson on Negligence, sec. 1725.)

A clear statement of the doctrine appears in *St. Louis & S. F. R. Co.* v. *Hodge,* 53 Okl. 427 [157 Pac. 60], wherein many cases adopting the rule are cited and reviewed. It is there said: "Admittedly a railroad company has, as against trespassers, an exclusive right to the occupation and use of its tracks within its yards, as well as of its tracks at other points, and to persons trespassing it owes no duty except to avoid injuring them unnecessarily after they are discovered upon the premises. This right is essential to the operations of the company in carrying on its business, and no other or higher duty arises unless the facts show that

the person injured is upon the tracks with the express or implied consent of the railroad company. If the person is a licensee, the company is obliged to use reasonable care to avoid injury to one sustaining that relation; the reason of the doctrine being that, where the company has the exclusive right to the use of its tracks, and has neither impliedly nor expressly licensed persons to be there, it has no reason to anticipate their presence, and consequently is under no obligation to be on the lookout, or to avoid injury to such persons. But where they may be expected to be, and where an implied license has arisen from the conduct of the company, it is bound to use care commensurate with the circumstances to avoid injury to such persons. In such cases the company has imposed upon itself a precautionary duty which it is bound to discharge, or suffer the consequences. Whether the circumstances are such in a particular case as to give rise to this implied license is a question to be decided upon the facts as they may arise in each instance. Where it is claimed that no such license has been extended, and but one inference can be reasonably drawn from the circumstances, and that showing the person to be a trespasser, the question becomes one of law. Where, however, there is testimony showing that a license, either expressed or implied, arises from the circumstances, the question becomes one of fact, to be submitted under proper instructions to the jury; and the question therefore is: Was there such a situation shown as made it clear, as a matter of law, that the boy at the time of his injury was a trespasser, or had the circumstances given rise to such an implied license as made the question one to be submitted to the jury?''

A case often cited as the leading case in support of the doctrine is *Barry* v. *New York Cent. R. Co.*, 92 N. Y. 289 [44 Am. Rep. 377]. Many other cases are to the same effect. See, also, *Chicago, R. I. & P. Ry. Co.* v. *Austin*, 63 Okl. 169 [L. R. A. 1917D, 666, 163 Pac. 517]; *Byrne* v. *New York Cent. R. Co.*, 104 N. Y. 362 [58 Am. Rep. 512, 10 N. E. 539]; *Pomponio* v. *New York, New Haven & Hartford R. R. Co.*, 66 Conn. 528 [50 Am. St. Rep. 124, 32 L. R. A. 530, 34 Atl. 491]; *Grauer* v. *Alabama Great Southern R. Co.*, 209 Ala. 568 [96 South. 915]; *Hooker* v. *Chicago, M. & St. P. R. Co.*, 76 Wis. 542 [44 N. W. 1085]; *Troy* v. *Cape Fear*

& Y. V. R. Co., 99 N. C. 298 [6 Am. St. Rep. 521, 6 S. E.
77]; *Lewis* v. *Rio Grande Western Ry. Co.*, 40 Utah, 483 [123
Pac. 97]; *Midland Valley R. Co.* v. *Kellogg*, 106 Okl. 237 [233
Pac. 716]; *Taylor* v. *President etc. of Delaware & H. Canal
Co.*, 113 Pa. St. 162 [57 Am. Rep. 446, 8 Atl. 43]; *Keim* v.
*Gilmore & P. R. Co.*, 23 Idaho, 511 [131 Pac. 656]; 33 Cyc.,
p. 767, as in accord with the general doctrine stated; and
*Palmer* v. *Oregon Short Line R. Co.*, 34 Utah, 466 [16 Ann.
Cas. 229, 98 Pac. 689], for a discussion of the various doc-
trines governing the measure of care owed to trespassers
and licensees.

The case of *Felton* v. *Aubrey,* 74 Fed. 350 [20 C. C. A.
436], relied upon by the defendant, cites and reviews some
of the cases adhering to the doctrine that there is no dis-
tinction between trespassers and implied licensees upon the
railroad's right of way and points out that these cases rest
on the doctrine of the English cases touching the liability
of the owner to those whom he suffers or permits to go upon
or across his premises. Nevertheless, the rule which is ap-
proved in the case of *Felton* v. *Aubrey* is the rule to be
deduced from *Barry* v. *New York Cent. R. R. Co., supra,*
and which is stated to be the following:

"Nonliability to trespassers is predicated upon the right
of the company to a clear track, upon which it is not
bound to anticipate the presence of trespassers. It there-
fore comes under no duty to a trespasser until his presence
and danger are observed. But if it has permitted the public
for a long period of time to habitually and openly cross its
track at a particular place, or use the track as a pathway
between particular localities, it cannot say that it was not
bound to anticipate the presence of such persons on its track,
and was therefore not under obligation to operate its trains
with any regard to the safety of those there by its license.
. . . The rule we deduce from the cases best reasoned and
most consistent with sound public policy is this: If the evi-
dence shows that the public had for a long period of time,
customarily and constantly, openly and notoriously, crossed
a railway track at a place not a public highway, with the
knowledge and acquiescence of the company, a license or
permission by the company to all persons to cross the track
at that point may be presumed." (*Felton* v. *Aubrey, supra,*
pp. 359, 360 of 74 Fed., citing *Barry* v. *New York Cent. etc.*

*R. R. Co.,* 92 N. Y. 289 [44 Am. Rep. 377], and other cases.)

Cases which go to the extreme of holding that a lookout is required at all times and places are cited in *Palmer* v. *Oregon Short Line R. Co., supra,* at pages 482, 483 of 34 Utah [98 Pac. 689].

Whatever doubt may be indulged with reference to the propriety of imposing liability on a railroad company for a breach of ordinary care toward persons using without objection its private right of way for their own purposes in thinly populated districts at points which are not established public crossings, unless the user is so open, notorious and continuous as required by the rule announced in *Felton* v. *Aubrey* and *Barry* v. *New York Central R. R. Co., supra,* we are convinced that in a populous and metropolitan area, as in the case before us, the interests of the public have uniformly outweighed the claim of railroad companies to the exclusive use of their rights of way unobstructed. Within city limits and other populous districts the court have applied the measure of ordinary care in situations where trains are operated through such districts in a way calculated or likely to inflict injury on persons whom the company should expect may be on or near its right of way. The case of *Imler* v. *Northern Pac. Ry. Co.,* 89 Wash. 527 [Ann. Cas. 1917A, 933, L. R. A. 1916D, 702, 154 Pac. 1086], is an instance where the court refused to apply the rule of ordinary care to a licensee walking on a footpath along the railroad's right of way in the country, and wherein cases which imposed the higher duty of ordinary care toward licensees were distinguished in the following language: "These cases, like many that might be cited, are either crossing cases, or cases from cities and towns where population is congested and the public have been accustomed to cross the tracks and to use them as a thoroughfare. Recoveries are allowed in such cases because a higher duty rests upon a railroad company under such circumstances." In *Palmer* v. *Oregon Short Line R. Co., supra,* at pages 480, 481 of 34 Utah [98 Pac. 695], is this language: "It is not necessary, however, that the track must be used so extensively and for such a length of time as to establish a license by implication before a railroad company may be required to keep a reasonable

lookout for persons on the track. In this regard much depends upon the place and surrounding conditions and circumstances. It may be that in a populous city, or in smaller towns and villages where persons habitually have recourse to and pass over or along the railroad tracks in considerable numbers and at a particular place or places for a much shorter time than is required to establish a license, the railroad company may still be required to exercise reasonable care for their safety and warn them of the approach of trains, although they are trespassers. But in such cases the use must be such as to apprise the railroad company through its employees that the track is being used for such purposes and by a considerable number of persons continuously (not occasionally merely), and with some degree of regularity and habitually. In this latter class of cases it is a question of fact for the jury to say whether, under all the circumstances, the company had exercised ordinary care in view of the facts and conditions prevailing. It does not follow, however, that because a few persons once or twice a week walk on the railroad track in a sparsely settled country district it is for the jury to say whether or not the railroad company discharged its legal duty in keeping a lookout for trespassers. It does not follow that because there is an occasional trespass it will be repeated." For other cases following this rule generally, see *Alabama Great South. R. Co.* v. *Guest,* 136 Ala. 348 [34 South. 968]; *Savannah & W. R. Co.* v. *Meadors,* 95 Ala. 137 [10 South. 141]; *Doyle* v. *Portland Ry., Light & Power Co.,* 71 Or. 576 [143 Pac. 623]; *Louisville & N. R. Co.* v. *Marlow,* 169 Ky. 140 [183 S. W. 470]; also 2 Thompson's Commentaries on the Law of Negligence, sec. 1726.

▐ Unquestionably, whether the operation of a train, with an arm, timber or other object not a proper and permanent portion of the train which the employees know or should have known was projecting in a manner likely to injure persons whom the company should expect to be on or near its tracks, amounts to a breach of care is properly a question for the jury. In the following cases it was so held and the evidence was deemed sufficient to sustain the jury's finding of negligence: *St. Louis Southwestern Ry. Co. of Texas* v. *Balthrop* (Tex. Civ. App.), 167 S. W. 246; *Missouri, K. & T. Ry. Co. of Texas* v. *Scarborough,* 29 Tex.

Civ. App. 194 [68 S. W. 196], and *Chesapeake & O. Co.* **v.** *Davis,* 22 Ky. Law Rep. 748 [58 S. W. 698], Id., 119 Ky. 641 [60 S. W. 14], wherein the court stated: "To run a train through a populous city, with an iron swinging in and out, as this was shown to be, was necessarily to endanger those on the highway along which it passed, and was evidence from which the jury might properly infer negligence." (*Atchison, T. & S. F. Ry. Co.* v: *Shadden* (Tex. Civ. App.), 185 S. W. 629; *Pruitt* v. *Southern Ry. Co.,* 167 N. C. 246 [83 S. E. 350]; *Brown-Scott* v. *Davis,* 216 Mo. App. 530, 270 S. W. 433; *Chapman* v. *Davis* (Mo. App.), 287 S. W. 832.)

As a conclusion from the various rules and doctrines discussed by the cases, it is important to discover whether the plaintiff is a trespasser or a licensee as bearing on the question of his contributory negligence. (See *Illinois Cent. R. R. Co.* v. *Eicher,* 100 Ill. App., at p. 610.) If he is a trespasser he is contributorily negligent in being on the tracks or right of way where he has no right to ,be, and must expect only that the defendant will not recklessly injure him. If he is on or near the tracks by what the courts have termed an implied license or invitation, he is not necessarily negligent in being there, and the railroad company owes him a higher degree of care. In cases where the evidence is conflicting it is for the jury to decide whether the plaintiff is a licensee or a trespasser and whether under the particular circumstances the defendant owed him a duty of care which it failed to exercise by reason whereof plaintiff was injured without fault on his part.

It was therefore immaterial here whether the injured plaintiff was an infant or an adult if the jury could find from the evidence that the defendant should have expected his presence at the place where he was at the time of the injury and could also find that the defendant's employees were negligent in the operation of its train over the portion of the right of way in question. Infancy would be material only on the question of contributory negligence. (See *Felton* v. *Aubrey, supra; Palmer* v. *Oregon Short Line R. Co., supra.)* The evidence on behalf of the plaintiffs, if taken as true, makes out a case of negligence on the part of the defendant which was the proximate cause of

the injury. The fact that defendant's witnesses testified that they inspected the train before leaving Culver Junction and found no projection cannot overcome the inferential finding of negligence in the manner of inspection. (See *Pruitt* v. *Southern Ry. Co.*, 167 N. C. 246 [83 S. E. 350]; *Brown-Scott* v. *Davis*, 216 Mo. App. 530 [270 S. W. 433]; *St. Louis & S. F. R. Co.* v. *Carr*, 94 Ark. 246 [126 S. W. 850].)

The instructions, the rejection of which is complained of by the defendant, were not in accord with the principles herein concluded to be applicable and were properly refused by the trial court.

The cases cited by the defendant are not controlling. In *Louisville & N. R. Co.* v. *Wade*, 18 Ky. Law Rep. 549 [36 S. W. 1125], on which the defendant specially relies, it was held that there was no evidence of a license or permission to the fourteen year old plaintiff to be between the rails of a switch when he was struck by a projecting timber which was not shown to have been there through any gross negligence of the defendant. In *Carr* v. *Missouri Pac. Ry. Co.*, 195 Mo. 214 [92 S. W. 874], the questions whether the plaintiff was a licensee or a trespasser and whether he was injured by a flying brakeshoe from a passing train through defendant's negligence were left to the jury, which found for the defendant, although the supreme court of Missouri indicated that it would apply to mere licensees on a commonly used footpath the same rule as applied to trespassers. In *Thomas* v. *Cincinnati, N. O. & T. P. Ry. Co.*, 127 Ky. 159 [105 S. W. 379], the plaintiff, who was standing near the defendant's tracks in the country, was struck by a coal gate which fell off the train as it passed her. The court of appeals of Kentucky pointed out that the defendant was not under the duty to anticipate plaintiff's presence at the place where she was at the time of the injury and the defendant was not recklessly or wantonly negligent. In *Toomey* v. *Southern Pacific R. R. Co.*, 86 Cal. 374 [10 L. R. A. 139, 24 Pac. 1074], the deceased was a trespasser without any right to be where he was when struck.

The instructions given and objected to by the defendant involved only one theory of the case. The record shows that the instructions as a whole were not unfavorable to the

defendant on the proper theory of the case and as no error appears, the judgment is affirmed.

Langdon, J., and Richards, J., concurred.

Hearing in Bank denied.

All the Justices concurred.