ELLA RAMBAUD NEWELL, Respondent, v. JACOB M. DICKINSON, Receiver of the Chicago, Rock Island & Pacific Railway Company; CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, a Corporation, and A. B. STANLEY, Appellants.

St. Louis Court of Appeals. Opinion Filed June 29, 1921.

1. **RAILROADS: Negligence: Pedestrian on Track: Place Used by Public: Lookout by Engineer Required.** At a place on the tracks of a railroad company customarily used by the public with the ac-

207 Mo. App.—24

quiescence of the company, the engineer had no right to expect a clear track, but the presence of persons on the track at said place of user was to be anticipated by him, and he was therefore charged with a duty to use ordinary care to look out for pedestrians, and to use due care to prevent striking them.

2. ———: ———: ———: **Death by Wrongful Act: Evidence: Inferences.** In an action for damages for the death of plaintiff's husband, who was found dead in the right of way ditch near a railroad track, alleged to have been killed by a locomotive operated by defendant, *held* that while there was no direct evidence that the deceased was struck by the train, this fact can be legitimately inferred from the evidence.

3. ———: ———: ———: ———: **Humanitarian Doctrine: Evidence: Requirements.** In order to bring a case within the humanitarian rule, it is necessary that there be evidence, either direct or inferential, that the person in charge of the train could, by exercising ordinary care, have seen the deceased in a position of peril and at a distance sufficiently great to have enabled him to have stopped the train before striking the deceased.

4. ———: ———: ———: ——: ———: **Evidence Insufficient.** In an action to recover damages for the death of plaintiff's husband, a licensee on the right of way, alleged to have been negligently killed by a locomotive operated by defendant, where a recovery is sought upon the humanitarian rule, evidence reviewed and *held* insufficient, either direct or inferential, to show that the deceased was in the danger zone a sufficient length of time and far enough away from the on-coming train to give the engineer an opportunity to avoid striking him.

Appeal from the Circuit Court of St. Louis County.— *Hon. John W. McElhinney,* Judge.

REVERSED.

*A. E. L. Gardner* for appellants.

(1) Defendants' instruction, in the nature of a de-. murrer to the evidence, requested at the close of plaintiff's case, should have been given by the court because: (a) There is no evidence, positive or inferential, that plaintiff's deceased husband was upon the track, lying, standing or sitting, for a time prior to the injury, suf-

ficiently long for either actual or constructive sight by persons in charge of the train, and when it was at a distance sufficiently great to have enabled those in charge of the train to have averted the injury to the deceased through prompt action with the means at hand for that purpose. Hamilton v. Railroad, 250 Mo. 714; Whitesides v. Railroad, 186 Mo. App. 608; Baecker v. Railroad, 240 Mo. 507; Dyrez v. Railroad, 238 Mo. 33. (b) While it may be a legitimate inference from all the facts in evidence that decedent was struck by the train, a second inference, resting upon this first inference, to the effect that decedent was seen or seeable on the track in a position of peril and at a distance sufficient to permit the stoppage of the train, is not permissible. Hamilton v. Railroad, 250 Mo. 722; Glick v Railroad, 57 Mo. App. 104, and cases cited; Whitesides v. Railroad, 186 Mo. App. 621. (2) Plaintiff's instruction 1 is erroneous because: (a) It submitted to the jury whether plaintiff's deceased husband was unconscious of the oncoming train when there was no evidence in the case from which the jury could determine this fact. (b) Because it submitted to the jury the question whether the persons in charge of the train, by the exercise of ordinary care, could have seen the decedent upon the track in a position of peril (and that he was unaware of such peril) a sufficient distance ahead of said oncoming train to have avoided the accident, when there was no evidence in the case from which the jury could determine either the time or place of the peril of the decedent or his unconsciousness of it. (c) It authorizes a finding for the plaintiff although deceased was on the railroad track without a legal right, and was himself guilty of negligence in being there, although the persons in charge of the train did not actually see him in a position of peril in time to have avoided the accident. If the decedent was on the track without legal right he was a trespasser, and the duty to avoid injuring him did not arise until he was actually seen; there is no evidence that the persons in charge of the train saw the deceased

before he was struck. Wells v. Lusk, 188 Mo. App. 63; Moore v. Railroad, 176 Mo. 528; Reyburn v. Railroad, 187 Mo. 565; Frye v. Railroad, 200 Mo. 405; Hall v. Railroad, 219 Mo. 586; Degonia v. Railroad, 224 Mo. 594; Nivert v. Railroad, 232 Mo. 648; Hamilton v. Railroad, 250 Mo. 722. (d) This instruction is contradictory and inconsistent in itself in this, that in its first part it authorizes a recovery by plaintiff upon the theory that the decedent was a licensee upon the tracks of the defendant railroad company, and in the latter part it authorizes a recovery upon the theory that the decedent was upon the tracks without legal right, and, therefore, was a trespasser, and although decedent was negligent in so being upon the tracks, and although decedent was not actually seen by the persons in charge of the train before he was struck.

*Peyton H. Smith* and *Robert M. Zeppenfeld* for respondent.

(1) The defendant's demurrer to the evidence was properly overruled, because: (a) There is evidence both positive and inferential that plaintiff's deceased husband was upon the track for a time prior to the injury sufficiently long for either actual or constructive sight by persons in charge of the train and when it was at a distance sufficiently great to have enabled those in charge of the train to have averted the injury to the deceased through prompt action with the means at hand for that purpose. Murphy v. Railroad, 228 Mo. 56; Hinzeman v. Railroad, 182 Mo. 611; Klockenbrink v. Railroad, 172 Mo. 678; Morgan v. Railroad, 159 Mo. 262; Sinclair v. Railroad, 133 Mo. 233; Stark v. Lusk, 194 Mo. App. 250; Affirmed, 216 S. W. 1119; Reardon v. Railroad, 114 Mo. 384; Rine v. Railroad, 100 Mo. 228; Dutcher v. Railroad, 241 Mo. 173. (b) The existence of the fact may be shown by the proof of other facts from which an inference of its existence may be drawn: Rine v. Railroad, 100 Mo. 228. (c) When a certain state of

facts is once shown to exist, it is presumed to continue to exist until the contrary is shown. Westinghouse Electric & Mfg. Co. v. Hodge, 181 Mo. App. 232; Dehner v. Miller, 166 Mo. App. 504; Kerr v. Railroad, 215 S. W. 396. There is no error in plaintiff's instruction one, because: (a) There was sufficient evidence shown that deceased was unconscious of the oncoming train from which it could be inferred by the jury because of the fact that no whistle was blown to warn him and no bell was heard by anyone which would warn him of the approach of the train, and from the fact that he was walking east and the train was approaching him from the rear and that he remained in the range of the train long enough to be struck. (b) There was sufficient evidence that a person could be seen along the said track a distance of 700 feet or more and even recognized and identified at that distance, and therefore the jury could find from such evidence, that the persons in charge of the train if they had exercised ordinary care could have seen the decedent upon the track sufficient distance ahead of said oncoming train to have avoided the accident, as the persons in charge of the train could not alone have sounded the whistle but could have even stopped the train within four or five hundred feet at the most, and there was sufficient evidence that the position of the deceased at the time that said train was approaching within a distance of 700 feet, was a position of peril and that he was unaware of such peril at the time the train had approached him within five or six hundred feet. (c) The rule is that the persons in charge of a train must have seen, or by the exercise of ordinary care, could have seen decedent upon track and not that the parties in charge of the train actually saw the decedent upon the track, in time to have averted the injury to the deceased through prompt action with the means at hand for that purpose. This is especially true when a positive user is shown. Murphy v. Railroad, 228 Mo. 56; Bennett v. Railroad, 242 Mo. 137; Dutcher v. Railroad, 241 Mo. 137; Reyburn v. Railroad, 187 Mo.

574; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678; Hinzeman v. Railroad. 182 Mo. 611; Stark v. Lusk, 194 Mo. App. 250; Eppstein v. Railroad, 197 Mo. 736.

BRUERE, C.—Plaintiff brings this action to recover damages for the death of her husband, alleged to have been negligently killed by a locomotive operated by the defendant, the Chicago, Rock Island & Pacific Railway Company. Plaintiff had judgment below for two thousand dollars and defendants have appealed.

The petition alleges, *inter alia,* that deceased was struck and killed by said locomotive while walking eastwardly on the railway track; that there was a habitual user for many years of the track by the public, at the place of the accident, with the forbearance and consent of said railway company; and counts for recovery upon the application of the humanitarian or last clear chance rule.

The answer is a general denial coupled with a plea of contributory negligence and a plea that the deceased, at the time he received the alleged injuries, was a trespasser upon the tracks of the defendant railway company and was not seen at the time by the person or persons in charge of the said oncoming locomotive.

At the close of plaintiff's case the defendants requested the court to give to the jury a peremptory instruction to find for the defendants, which the court refused to give. The defendants offered no testimony.

Appellants assignment of error is that the lower court erred in refusing to give the peremptory instruction.

The facts brought out at the trial, necessary to an understanding of the point raised, are as follows: The accident occurred on the 2nd day of September, 1916, in the morning at about 6:41 o'clock. The deceased on said day lived with his wife near Vigus, a Station in St. Louis County, Missouri, on the railroad line of the defendant railway company. His house was situate about one hun-

dred feet south of the main track of said railway company and about seven hundred and ten feet east of Vigus Station and seven hundred and thirteen feet west of the point of the accident. The point where deceased is presumed to have been struck is fourteen hundred and twenty-three feet east of Vigus Station and two hundred and sixty-two feet east of the east end of the railroad bridge or trestle across Fee Fee Creek. Said point is marked "rail joint" on the plat introduced in evidence. East of said trestle the railway company maintains two tracks, the main track and the so-called north quarry track. The north quarry track is north of the main track and runs parallel therewith up to a point about two hundred and sixty-two feet east of the said trestle; it then leaves the main track and turns to the northwest. The north quarry track runs into the main track about four hundred feet east of the trestle. The tracks run east and west. The space north of the main track and east of the trestle, between the main track and the north quarry track, is level for a distance of about four hundred feet east of the trestle; said space is used for unloading and piling up railroad ties. There was no evidence that railroad ties were piled on said space at the time of the accident. South of the main track there is a slope or embankment. We would gather from the facts that the height of the slope or embankment is three feet; there being testimony that the right-of-way ditch, in which the deceased was found, was three feet below the level of the tracks. The track, adjacent to Vigus Station, is graded level one hundred feet in width and runs that width east to the north quarry switch east of the trestle. North of and about opposite the point where deceased is presumed to have been struck is a telegraph pole. From Vigus Station east to a point eighty-eight feet west of the west end of the railroad bridge there are two tracks, the main track or south track and the siding track. Four hundred and sixty-five feet east of Vigus Station the south quarry switch runs into the main track. Running eastward from Vigus Station the tracks curve to the southeast up to a

point about four hundred and twenty-five feet east of Vigus Station; from that point eastward the tracks run straight up to and beyond the point where deceased is presumed to have been struck. The railroad bridge across the Fee Fee Creek is sixty-three feet and nine inches in length. There is a walkway south of the south rail and a walkway north of the north rail across said trestle. A photograph discloses that a railing extends along the north and south side of the trestle; and that the walkways are constructed of wooden planks and are sufficiently wide to enable a person to walk on them, across the bridge, without any danger of being struck by a passing train. East of where deceased is presumed to have been struck there is a footpath which runs east and south of and along the ties of the main or south track. From a point about where the north quarry track joins the main track going west to Vigus Station there is the slope or embankment to the track on the south side and between these points the public for many years habitually used the right-of-way and the railroad tracks as a footpath.

With the physical facts thus before us the testimony of the witnesses, pertaining to the accident, can be more readily understood. Said testimony is as follows: Between 6:30 and 7 o'clock on the morning of the accident the plaintiff stood in her doorway and saw the deceased leave their home going east. Plaintiff last saw her husband when he was on the trestle across Fee Fee Bridge. She testified that there was a fog that morning, but she was able to see plainly from where she stood to the trestle where her husband disappeared walking east on the trestle. A train passed Vigus Station going east about six or seven minutes thereafter. Plaintiff further testified that she did not hear the bell of the locomotive ringing when the train passed her home.

Witness Mrs. Lillie Grace, who resides fifty-three feet east of the Newell home, also saw deceased leave his home the morning of the accident. She observed deceased opposite his home walking east on the railroad tracks. She saw him on the trestle at which point he

was lost to view. After five minutes thereafter the train in question passed Vigus Station. Witness was unable to tell whether deceased in crossing the trestle used the walkway on the trestle or whether he used the railroad tracks. The plaintiff and Mrs. Grace are the only witnesses who testified seeing deceased on the morning of the accident before he was killed.

The oncoming train in question gave several blasts of the whistle just west of Vigus Station. It passed said station at 6:41 o'clock, A. M. There was a fog on the morning of the accident at Vigus Station. The witnesses testimony differed as to the distance a person could be observed through the fog; the longest distance testified to being seven hundred feet and the shortest fifty feet.

The plaintiff called the defendant, A. B. Stanley, the engineer in charge of the train, as a witness: He testified that he kept the automatic bell of the locomotive continuously ringing from a half mile west of Vigus Station to the city of St. Louis. That he kept a sharp outlook for persons on the track and did not see the deceased and did not know his train struck him until he was told about it. He further testified that owing to the density of the fog he was unable to see a person on the track at a greater distance than one hundred feet. Witness saw a hat taken off the engine when his train reached St. Louis. The train was traveling thirty miles an hour and could be stopped in a distance from five hundred to six hundred feet.

About fifteen minutes after the train in question passed Vigus Station the deceased was found dead in the right-of-way ditch, about twelve or fifteen feet south of the south or main track and three feet below the level of the track. An umbrella was sticking in the ballast on the south side of the south track eighteen inches from the ties and about opposite the telegraph pole. The body of the deceased was found forty or fifty feet east and twelve to fifteen feet south of the umbrella. There were indications that the deceased had been rolled along the

rails and pieces of his clothing were found sticking on the steel splinters of the south rail just east of where . the umbrella was found. The body was hatless and shoeless. One shoe was picked up, but at what point the evidence does not disclose. The face of deceased was bruised and bloody and one of his legs was broken and his clothes were torn. The point where the umbrella was found was two hundred and sixty-two feet east of the east end of the trestle.

The evidence regarding user of the tracks by the public, at the point of the accident, was sufficient to fix the status of the deceased while on the right-of-way, within the user zone, that of a licensee and not that of a trespasser. The engineer had no right to expect a clear track, but the presence of persons on the track, at said place of user, was to be anticipated by him because of the customary user of the tracks by the public, with the acquiescence of the railway company. The engineer, therefore, was charged with the duty to use ordinary care to look out for pedestrians at the place in question and to use due care to prevent strikng them. Ahnefeld v. Railroad, 212 Mo. 301, 111 S. W 95; Frye v. St. L. I. M. & S. Ry. Co., 200 Mo. 377, 98 S. W. 566; Fiedler v. The St. Louis, I. M. & S. Ry. Co., 107 Mo. 1. c. 651, 18 S. W. 847.]

While there is no direct evidence that the deceased was struck by the train, this fact can be legitimately inferred from the facts regarding the finding of deceased's hat on the locomotive, the condition and position of deceased's body, which was found a few minutes after the train in question had passed, and the further evidence that parts of deceased's clothing was sticking on the rails close to where his body was found.

But the decisive question here is: Was there any evidence introduced, either direct or inferential, to show that the person in charge of the train in question had the opportunity to avoid striking the deceased?

Recovery is sought in this case upon the humanitarian rule. In order to bring the case within said rule,

it is necessary that there be evidence, either direct or inferential, that the person in charge of the train could by exercising ordinary care have seen the deceased in a position of peril and at a distance sufficiently great to have enabled him to have stopped the train before striking deceased. While there is evidence that, on the morning of the accident, the deceased could have been seen on the track at a distance of seven hundred feet, which distance, under the evidence, was sufficient within which to stop the train; yet there is no evidence whatever in the record, either positive or inferential, that the deceased was in the place where he was struck, or in a position of peril upon or near the track, sufficiently long prior to the accident, for actual or constructive sight by the engineer and when the train was at a distance sufficiently great to have enabled the engineer to stop the train before striking deceased.

The deceased when last seen was walking east on the trestle across Fee Fee Creek; this was five minutes before the train in question passed. Whether or not deceased was then in a position of peril the evidence does not disclose. The distance from where deceased was last seen to the place where he is presumed to have been struck is two hundred and ninety-four feet. Where did the deceased walk in travelling this distance? Across the trestle there were walkways. East of the trestle, to where he is presumed to have been struck, the space between the south or main track and the north quarry track was wide and level, which afforded him an opportunity to step from the main track and out of the danger zone on to this level space north of the main track. Where the deceased traveled from the point he was last seen on the trestle to the point where he is presumed to have been struck is left entirely to surmise and conjecture. Absent the necessary facts showing at what place the deceased entered the danger zone in view of the approaching engine and how long he remained in a position of peril, it is impossible to intelligently determine whether or not the en-

gineer was guilty of negligence and that such negligence was the proximate cause of the injury.

There is no evidence in the record, either direct or inferential, to show that the deceased was in the danger zone a sufficient length of time, and far enough away from the oncoming train, to give the engineer an opportunity to avoid striking him.

This is not a case like the case of Starks v. Lusk, 194 Mo. App. 250, cited by respondents: In that case the deceased was killed on a trestle which was four hundred and twenty-five feet long. The facts proven were "that the deceased was necessarily in peril from the time the train entered on that trestle until it struck him, whether he was walking, standing, sitting or lying down and regardless of what part of the trestle he was on. He could have come onto the trestle nowhere but at the north end and, whereever he was between those points, and whatever doing, he was in peril. He was killed about two hundred and eighty feet from where he entered into the place of peril and while the train was going that distance, at least, the deceased was seeable and was in a position of danger whatever he was doing or wherever he was. The train could have been stopped in much less distance. The place where this deceased was killed, and for some distance on either side thereof, was not like the open roadbed in the Hamilton and Whitesides cases, where only a step or two in space and a moment of time separated the place of safety from the place of danger."

Whitesides v. Railroad, 194 Mo. App. 608, and Hamilton v. Railroad, 250 Mo. 714, are cases decisive of the point under discussion.

In the Whitesides case this court speaking through NORTONI, J., says, l. c. 621: "The precise inference called for relates to the position, or rather the place, of the man (that is, decedent) on the track in the instant case, together with the ability of the engineer to see him there, for such is essential to the fact of negligence. The inferences that a man could have been seen on the track and the train stopped in time to have saved him arise,

not from the established fact that decedent was on the track at any given place, but rather rest upon the inference that he was. The decedent was found to be upon the track through utilizing inferences from facts given in evidence and so being upon the track, through inference alone, another inference may not be rested thereon to the effect that he was there at some particular place and in view of the approaching engineer for a sufficient length of time to enable him to avert the injury by the use of the appliances at hand. Touching this matter, the legitimate evidence seems to be insufficient under the recent ruling of the Supreme Court in a similar case. [See Hamilton v. Kansas City, etc. R. Co., 250 Mo. 714, 157 S. W. 622.]'' [See, also, Baecker v. Railroad, 240 Mo. 507, 144 S. W. 803; Justus v. St. Louis-San Francisco Ry. Co., 224 S. W. 71; Joseph W. Bibb, Admr., v. Robert F. Grady, decided by this Court May 3, 1921, and cases cited therein.]

The above quotation in the Whitesides case is applicable here. We feel constrained to hold that the evidence was insufficient to submit the case to the jury. The peremptory instruction should have been given.

It follows that the judgment should be reversed; the Commissioner so recommends.

PER CURIAM:—The opinion of BRUERE, C., is adopted as the opinion of the court. The judgment of the circuit court of the county of St. Louis is accordingly reversed. *Allen, P. J.,* and *Becker, J.,* concur. *Daues, J.,* not sitting.