EDITH BROWN-SCOTT, Respondent, v. JAMES C. DAVIS, Designated Agent, Appellant.*

St. Louis Court of Appeals.    Opinion Filed February 3, 1925.

1. **RAILROADS: Negligence: Pedestrians: Using Path Between Tracks: Trespassers: Statute.** Plaintiff, struck and injured by timber projecting from a train while walking along a beaten path between railroad tracks, which path had been used as a passageway for foot travelers for many years, and for such a length of time as to impute knowledge of its use to the railroad company, *held* not a trespasser within section 9948, Revised Statutes 1919.

2. **———: ———: ———: ———: Acquiescence: Contributory Negligence: Evidence: Question for the Jury.** Plaintiff, struck and injured by timber projecting sixteen and one-half feet from a train while walking along a beaten path between the tracks, *held* not guilty of contributory negligence as a matter of law, for failure to look back, where her position in walking along the track relative to the ordinary train passing along the track was comparatively safe, and she had no cause to apprehend danger.

3. ———: ———: ———: ———: **Injured by Timber Projecting from Train: Res Ipsa Loquitur Doctrine Applicable.** Where plaintiff while walking along a beaten pathway between railroad tracks, being invited thereto by long continuous public user, to traverse the passway at will, was struck and injured by timber projecting sixteen and one-half feet from a train which approached from the rear, *held* the doctrine of *res ipsa loquitur* applied, and cast on defendant railroad company the burden of explanation.

4. **NEGLIGENCE: Res Ipsa Loquitur: Doctrine Stated.** The doctrine of *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict.

5. ———: ———: **Pleading: Specific Acts of Negligence Alleged: Precludes Reliance on Doctrine of Res Ipsa Loquitur.** Where plaintiff pleaded that she was struck on the head and injured by a large piece of timber which defendant's "agents and servants, had carelessly and negligently permitted to project or extend from a car of lumber that was being carried on its train," and that defendant's agents and servants "saw, or by the exercise of ordinary care could have seen the timber projecting or extending from said car, and could have replaced the same in a safe position for transportation, but carelessly and negligently failed to do so," *held* the petition pleads specific negligence, and that plaintiff by pleading specific negligence, could not rely upon the doctrine of *res ipsa loquitur*.

6. **INSTRUCTIONS: Railroads: Negligence: Instruction Unsupported by Evidence: Error.** In an action for damages for personal injuries caused by being struck by timber projecting sixteen and one-half feet from a carload of lumber, an instruction as to defendant's negligence if its servants saw, or by the exercise of ordinary care could have seen, the timber projecting, *held* there was a lack of evidence on which to base the instruction, as there was no evidence that defendant's servants saw, or by the exercise of ordinary care could have seen, the timber projecting, as there was a want of evidence as to when it first projected.

7. ———: ———: ———: **Instruction Denying Recovery for Injury Caused by Timber Projecting From Train: Properly Refused.** In an action for damages for personal injuries, caused by being struck by timber projecting sixteen and one-half feet from a carload of lum-

ber, while plaintiff was walking along a passageway between tracks, an instruction to find for defendant if the timber got in that position after the train left the last station fourteen miles before reaching the point of accident, *held* properly refused, defendant not being absolved from the duty of discovering, by the exercise of ordinary care, the projecting timber after the train left such station.

8. **APPELLATE PRACTICE**: Reversals: Cause of Action on Different Theory: Cause Not Reversed Outright but Remanded to Permit Amendment. In an action for damages where plaintiff pleads specific negligence, and the evidence shows a cause of action under the *res ipsa loquitur* doctrine, the appellate court where occasion demands, instead of reversing the judgment outright, will remand the cause, so that plaintiff may have an opportunity to amend the petition, pleading general negligence only.

---

*Headnote 1. Railroads, 33 Cyc., pp. 759, 761; 2. Railroads, 33 Cyc., p. 906; 3. Railroads, 33 Cyc., pp. 878, 892; 4. Negligence, 29 Cyc., pp. 591, 624; 5. Railroads, 33 Cyc., p. 872; 6. Railroads, 33 Cyc., p. 911; 7. Railroads, 33 Cyc., p. 779; 8. Appeal and Error, 4 C. J., Section 3235.

Appeal from the Cape Girardeau County Court of Common Pleas.—*Hon. John A. Snider*, Judge.

REVERSED AND REMANDED.

*Jas. F. Green* and *W. C. Russell* for appellant.

*Spradling & Dalton* for respondent.

(1) Respondent was not a trespasser within the definition laid down in the statute so as to bar recovery in this case. Ahnefeld v. Railroad, 212 Mo. 280; Thompson v. Railway Co., 243 Mo. 336; Murphy v. Railroad, 228 Mo. 56; Hicks v. Railroad, 64 Mo. 430; Burns v. Railroad, 176 Mo. App. 330; Ranson v. Depot and Express Co., 142 Mo. App. 361. (2) Respondent was not guilty of contributory negligence as a matter of law and the question of contributory negligence was properly submitted to the jury. Hicks v. Railroad, 64 Mo. 430; Langon v. Railroad, 72 Mo. 392; Powell v. Railroad, 59 Mo. App.

626. (3) In this case the testimony showed that appellant ran his train through the village of Randles and alongside of the right-of-way which was used by the public, not only for business connected with the railroad, but also for the general purpose of traveling from place to place, with a piece of timber extending or projecting outward and downward about sixteen feet from a car of lumber and extending over the right-of-way so far as to be dangerous to persons on said right-of-way, and respondent walking on said right-of-way where it would otherwise have been safe was injured by being struck by said timber. This made out a case for respondent. Thompson v. Railroad, 243 Mo. 336; Hicks v. Railroad, 64 Mo. 430; Burns v. Railroad, 176 Mo. App. 330. (4) Appellant owed the respondent the duty to exercise ordinary care to avoid injuring her. Respondent at the time of receiving her injury was walking along the right-of-way at a place regularly used by the public in going to and from the station and had been so used for a long time with the knowledge and consent of the appellant. Hence she was rightfully there whether she had business with the appellant or not and appellant owed her the duty to exercise ordinary care to avoid injuring her. Thompson v. Railroad, 243 Mo. 334; Hicks v. Railroad, 64 Mo. 430; Ahnefeld v. Railroad, 212 Mo. 280; Brown v. Railroad, 50 Mo. 461; Fearsnon v. Railroad, 180 Mo. 208; Scullin v. Railroad, 184 Mo. 695; Murphy v. Railroad, 228 Mo. 56; Langon v. Railroad, 72 Mo. 392; Doss v. Railroad, 59 Mo. 27, 36; Ranson v. Depot and Express Co., 142 Mo. App. 361. (5) Appellant's instruction No. 6 was properly refused as it did not properly declare the law of this case. Appellant was negligent in running its train through Randles without making an inspection. The measure of appellant's care is controlled by the circumstances of the case. The greater the hazard the greater the care required. Hicks v. Railroad, 64 Mo. 430; Frick v. Railroad, 75 Mo. 595; Powell v. Railroad, 59 Mo. App. 626; Brown v. Railroad, 50 Mo. 461; Scullin v. Railroad, 184 Mo. 695. (6) Appellant's Instructions

Nos. 3, 4 and 5 did not correctly declare the law of this case. (a) Where there is reason to apprehend that the track may not be clear the liability of appellant is not limited to want of care after the discovery of the danger. Powell v. Railroad, 59 Mo. App. 626; Murphy v. Railroad, 228 Mo. 56; Ahnefeld v. Railroad, 212 Mo. 280. (b) Appellant was negligent in moving its train past the point where plaintiff was injured with a piece of timber protruding outward and downward from one of the cars in said train far enough to strike persons walking along and adjoining the track on which said train was moving. Thompson v. Railroad, 243 Mo. 336; Hicks v. Railroad, 64 Mo. 430; Burns v. Railroad, 176 Mo. App. 330. (c) Respondent was not guilty of contributory negligence as a matter of law in failing to look or to get far enough away from the passing train to avoid injury. Hicks v. Railroad, 64 Mo. 431; Langon v. Railroad, 72 Mo. 392; Powell v. Railroad, 59 Mo. App. 626. (d) Appellant's train was approaching the station at Randles, Missouri, where by reason of the public user of the right-of-way the presence of persons thereon was reasonably to be expected. The law required the exercise of ordinary care to avoid injury to such persons as might be upon said right-of-way at said place. Ordinary care under the circumstances required those in charge of said train to look out for loose timbers and if they had looked they would have seen this extending timber and have prevented the injury to respondent. Thompson v. Railroad, 243 Mo. 336. (e) The testimony offered by the respondent having made out a case under the doctrine of *res ipsa loquitur* it became a question for the jury as to whether or not the presumption of negligence was overcome by the testimony offered by appellant and the case was properly submitted to the jury. Brown v. Railroad, 256 Mo. 522. (7) Respondent's Instruction No. 1 correctly declared the law. Hicks v. Railroad, 64 Mo. 430; Thompson v. Railroad, 243 Mo. 334; Burns v. Railroad, 176 Mo. App. 330; Powell v. Railroad, 59 Mo. App. 626; Frick v. Railroad, 75 Mo. 595; Ahnefeld v. Railroad, 212

Mo. 280; Fearsnon v. Railroad, 180 Mo. 208; Scullin v. Railroad, 184 Mo. 695; Murphy v. Railroad, 228 Mo. 56; Ranson v. Depot and Express Co., 142 Mo. App. 361.

DAVIS, C.—This is an action for negligence, for striking plaintiff, while walking north along the railroad tracks within a village, with a timber projecting from a car, a fractional part of a moving freight train. Defendant appealed from the judgment on the verdict for $6000 awarded plaintiff.

Plaintiff's evidence tends to show that the St. Louis & Southwestern Railway Company, commonly called the Cotton Belt, owns the railroad tracks through the village of Randles, Cape Girardeau county. For some time prior to November 30, 1919, the day of the injury, the Director General of Railroads for the United States in charge of the Missouri Pacific Railway Company, operated its engines and trains of cars over the tracks and right of way of the Cotton Belt in and through Randles, a village of some 500 inhabitants. The railroad, at Randles, comprises three tracks, the main track, the passing track, twelve to fifteen inches lower than the main track, holding about 160 cars, and the spur or loading track lower than the passing track, holding twelve or fifteen cars. These tracks run generally north and south, and the depot is in the north part of the town. The condition of the country around Randles is level, low and swampy. There is a wagon road about fifty feet to the east of the tracks as you go north, without sidewalks, at least ten feet lower than the railroad. The passing track lies west of the main track, and the spur track lies west of the passing track. There are two beaten paths between the tracks, one of which lies between the main track and the side track, and the other to the west of the side track. The right of way of the railroad had, for as long as twenty-two years, so the evidence shows, been regularly used by pedestrians in going to and from the depot, about their business and to church, and in going to and from other parts of said village. People used

the tracks, day and night, going to and from their places of business. There were no signs forbidding the use of the tracks as passageways, nor was there any evidence of any objection to people using the tracks.

Plaintiff, returning from a visit of a mile or so in the country, for the purpose of going to the depot, was proceeding north, sixteen or seventeen feet from the main track, along the railroad tracks with others and while on the edge of the ties on the west side of the passing tracks, was hit in the face by a timber, extending and projecting about sixteen and one-half feet from a northbound freight train. The piece of timber projected from a Missouri Pacific Railway Company train operated by and in charge of the Director General of Railroads, running over the Cotton Belt right of way. Plaintiff, with others, was going to the depot to ascertain the time the night train came north for Illmo, as two of the party intended to leave that night. Plaintiff heard the freight train coming, but failed to look back. The timber could have been seen at least a quarter of a mile. The track was straight for half a mile south.

Shortly after the piece of timber struck plaintiff in the face, it struck and broke a switch stand about seven feet high. About twelve feet of the piece of timber broke off and fell to the ground. There is also a switch stand on the south end of the loading track, which the evidence shows is a five foot stand. The tracks are on a level at the depot, near which plaintiff was struck, but, at the south end, the main tracks are higher than the side tracks, the passing track being probably fourteen or fifteen inches lower than the main track. There is another switch stand to the north, a seven foot stand, seven feet from the main track, which is on lower ground than the stand that was hit. One witness often saw the brakeman ride on the engine and sometimes in the caboose, but he did not know the proper place to ride. The piece of timber projecting from the side of the car could have been seen from either end of the train. Plaintiff could have seen it too if she had looked.

At Perkins, three miles south of Randles, there is a bridge across a stream, with banisters on the side four and one-half or five feet high and four or five feet from the tracks. The switch stand on the south end of the passing track was about five feet high and on ground fourteen or fifteen inches lower than the main track. The next switch stand on the west going north is about seven feet from main track and about seven feet high. The one that was knocked down was about fourteen feet from the main line, on ground nearly level. To the west side of the tracks, at Zeta, fourteen miles south of Randles, is a water tank. It is built on timbers, with a concrete foundation under it. It was about nine feet from the tracks up to where this piece of timber protruded from the car, and it hung down at an angle with the lower end four and one-half or five feet above the ground.

Defendant's evidence tends to show that at the place where plaintiff was struck by the timber the distance between the west rail of the main track and the east rail of the passing track is ten feet, eight inches. The distance from a flat car to the outside (west) end of the ties of the passing track was about fourteen feet, three inches. The engineer on this train testified in substance: That when these trains are made up at Paragould they are inspected. Between division points at stops, the employees in charge of the train replace anything hanging out. There were two brakemen on this train, one on the engine and the other in the caboose. The engineer was on the opposite side of the train from the accident and could not have seen the protruding timber. It would have been no trouble for the brakemen to see anything hanging out on this train. At this particular place they could have seen anything hanging out. One brakeman testified in substance: That there is a water tank at Zeta. When stops are made for water they inspect the train. He did not recall this particular train, and was only testifying of what was generally done when the train stops. He did not know whether the train stopped for

water at Zeta or not, but as the railroad crosses the Frisco railroad at Zeta they are required to stop at railroad crossings. If the train stopped at Zeta for water or at Dexter Junction, he or his fellow brakeman would have seen a projecting timber. He had no independent recollection of what was done on this trip. The other brakeman had no independent recollection of inspecting this train at Zeta or any other point. There is a water tank at Zeta on the west side of the railroad, and if this timber had been protruding from the car on that day at Zeta a distance of fourteen or fifteen feet, it could not have gotten by the water tank at Zeta. He did not know whether he looked back on this particular day or not. He could not tell whether he stopped at the tank at Zeta that day or not.

Such other facts as we deem necessary will be stated later.

I.   The action of the court below in refusing the instructions offered at the close of the plaintiff's case and at the close of the whole evidence to find for defendant is challenged. In urging error on that ground, defendant contends that plaintiff was a trespasser; that she could have seen the piece of timber projecting if she had looked back, and, failing to so do, charges her with contributory negligence as a matter of law; and the record is without proof that defendant negligently failed to properly inspect the train or that defendant had actual or constructive knowledge that the timber projected a sufficient length of time before plaintiff's injuries to have remedied it.

(a)   Defendant urges that section 9948, Revised Statutes 1919, declares plaintiff a trespasser. But this contention overlooks the construction placed on the statute by many cases, where the evidence tends to show that the railroad tracks had been used as a passageway by foot travelers for such a length of time as to impute knowledge of its use to the railroad company. In this case the evidence tends to show that the people had worn a beaten path, and that at that time the Missouri

Pacific was operating from five to ten or twelve trains a day over the Cotton Belt tracks from Paragould to Illmo, through the village of Randles. Thus the Missouri Pacific railroad had plenary knowledge of the use of the tracks as a passway at Randles by the general public, and that foot travelers were liable to be so using it at the time of the injury. In addition, due to her situation on the tracks in front of the freight train, the employees of defendant had notice of plaintiff's presence on the beaten pathway along the tracks.

Plaintiff testified: That she and others were going to the depot to find out the time the night train came north for Illmo, for two others were going to leave that night. In view of the evidence that the general public used the side track and right of way in going to, and from the station, without objection on the part of either railroad, we think that plaintiff, in using the tracks to go to the station to ascertain the time of the night train, was lawfully using the tracks as a passway with the knowledge of defendant. Defendant was then subjected to the duty of exercising reasonable care to avoid injuring plaintiff. In construing what is now section 9948, in Ahnefeld v. Railroad, 212 Mo. 280, 1. c. 305, 111, S. W. 95, Judge Fox, for the court, said: ''We have no hesitancy in holding that if a railway company at any particular point along the line of its road consented and acquiesced in the use of its track by the general public, and permitted the open, known, free, continuous and extensive use thereof by footmen, such conduct on the part of the railway company can be and should be, construed as amounting to an invitation by the railway company to use such track as a passway, and such conduct on the part of such company should be held as a qualification of the right of the company to invoke the provisions of the section of the statute heretofore referred to in an action by a person for injuries received by reason of the negligence of the operatives of the railway in failing to keep a proper lookout for the presence of such person who is upon the track of the railway by reason of its

conduct in consenting and acquiescing in the free, continuous and extensive use of such track as a passway." [Thompson v. Railroad, 243 Mo. 336, 148 S. W. 484; Zini v. Railroad, 250 S. W. 47; Dalton v. Railroad, 276 Mo. 663, 208 S. W. 828; Newell v. Dickinson, 207 Mo. App. 369, 233 S. W. 72.]

(b)  Defendant charges plaintiff with contributory negligence as a matter of law. Plaintiff knew that the train was coming before the timber struck her, although she knew nothing about the projecting piece of timber. Her position in walking along the side track, relative to the ordinary train passing along the track, was comparatively safe, that is, she had no cause to apprehend danger. The timber projecting to a distance of sixteen and one-half feet from the freight train was unusual and unlooked for. She did not anticipate such an occurrence, nor was a duty cast on her to do so. Using the tracks as a passway by invitation, implied at least, she could rely upon defendant exercising reasonable care to avoid injuring her. Looking to the evidence and the law applicable thereto, we are unable to say that plaintiff was guilty of contributory negligence as a matter of law.

(c)  Defendant seems to argue that the doctrine *res ipsa loquitur* cannot arise on the facts in this case. We think, however, it is demonstrated that plaintiff was using a passway analogous to a highway. She had been invited by long continuous public user, not denied by any act of defendant so far as the plaintiff's evidence shows, to traverse this passway at will. In using the passway it became defendant's duty to use ordinary reasonable care to avoid injuring her. That the timber projected was unexpected and unlooked for. The loaded freight train and its operation were peculiarly within the knowledge of defendant. The timber might not have projected had defendant used due care. This cast the burden of explanation on defendant.

In Mayne v. Railways, 287 Mo. 235, l. c. 248, 229 S. W. 386, it is said:

"Nor does it matter whether the plaintiff was a passenger or not in determining whether the doctrine of *res ipsa loquitur* would apply.

"Where the instrumentality which causes an injury is within the control of and operated by a party, and moves or operates in such a way that such motion or operation would not have happened except for some defect or negligent act, and injury to some person results, then the doctrine of *res ipsa loquitur* applies, and a plaintiff suing for an injury so caused has only to show control of the instrumentality by the defendant and its usual movements. It is then for the defendant to explain, if it can, the casualty, so as to exclude negligence on its part."

In Hicks v. Railroad, 64 Mo. 430, a case on analogous facts, however not expressly grounded on the doctrine *res ipsa loquitur,* the court said: The right of plaintiff to recover in this case does not depend upon the principle of law applicable to the case of a passenger or one who has procured a ticket to go as a passenger upon the train, who is injured while on, or getting off or on the train. The plaintiff was not a passenger, nor was he there to become such, nor had he any business with the defendant or any one else which required him to go on defendant's platform." When we say that the case is not grounded on the doctrine *res ipsa loquitur* we mean that *res ipsa loquitur* is not expressly mentioned.

The effect of the doctrine *res ipsa loquitur* is aptly stated in Sweeney v. Erving, 228 U. S. 233, 1. c. 240, to-wit:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa*

*loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff.''

We are of the opinion that the doctrine *res ipsa loquitur* is applicable to the facts in this case.

II. Defendant contends that the petition pleads specific negligence, and therefore denies that the doctrine *res ipsa loquitur* is apposite. The appropriate portions of said petition are as follows:

''That while plaintiff was walking north in the village of Randels, . . . she was struck on the head by a large piece of timber which the Missouri Pacific Railway Company, its agents and servants, had carelessly and negligently permitted to project or extend from a car of lumber that was being carried on its said train.

''That the Missouri Pacific Railway Company, its agents and servants in charge of said engine and train of cars, saw, or by the exercise of ordinary care could have seen the timber projecting or extending from said car, and could have replaced the same in a safe position for transportation, but carelessly and negligently failed to do so.

''That by reason of the carelessness and negligence of the Missouri Pacific Railway Company in permitting such timber to project or extend out from such car of lumber, the plaintiff was struck,'' etc.

The petition pleads specific negligence, and, where specific negligence is pleaded, plaintiff cannot rely upon the doctrine *res ipsa loquitur.* [Pointer v. Construction Co., 269 Mo. 104, 189 S. W. 805; Bergfeld v. Railways Co., 285 Mo. 654, 227 S. W. 106; Price v. Railroad, 220 Mo. 435, 119 S. W. 932; Orcutt v. Building Co., 201 Mo. 428, 99 S. W. 1062; McGrath v. Transit Co., 197 Mo. 97, 94 S. W. 872; Pate v. Dumbauld, 298 Mo. 435, 250 S. W. 49; Evans v. Railroad, 222 Mo. 435, 121 S. W. 35.]

III. Plaintiff's instruction No. 1, following the petition, was not only predicated on defendant's general

negligence in operating the train with a piece of timber projecting therefrom, but was further predicated on the fact that defendant saw, or by the exercise of ordinary care could have seen, the timber projecting in time to have replaced same to avoid injuring plaintiff. While there is evidence on the part of both plaintiff's and defendant's witnesses that if this piece of lumber had been projecting it could have been seen by the brakemen, there is no evidence where or when this piece of lumber began to project. If projecting, it could have been seen; if not projecting, it could not have been seen. While the instruction follows the allegations of specific negligence in the petition, there is no evidence that defendant's servants saw, or by the exercise of ordinary care could have seen, the timber projecting, as there is a want of evidence as to when it first projected; consequently there was a lack of evidence on which to base the instruction.

IV. Defendant complains of the action of the trial court in refusing its instruction No. 6. It is as follows:

"The court instructs the jury that if you believe and find from the evidence  that a piece of timber was protruding outward and downward from one of the cars in defendant's train as it passed through the village of Randels, and that it got in that position on said car after the train left Zeta, Missouri, you will find the issues for defendant, although you may believe and find from the evidence that it was in a dangerous and unsafe position for persons walking along or adjoining said train while said train was passing."

The evidence shows that the piece of timber knocked down a seven foot switch stand after it hit plaintiff. The evidence further shows that between the place where plaintiff was hit and the place where the passing track joins the main track on the south, there is another seven foot switch stand seven feet from the main track on lower ground; also a five foot switch stand where the passing track joins the main track on lower ground. The lumber projected from a height of nine feet downward, with the

projecting end four and one-half or five feet from the ground. There was also a bridge three miles south of Randels, with sides about five feet high and about five feet from the track. The piece of lumber passed over the heads of others who were nearer the train than plaintiff. The above is evidence from which it may be inferred that the lumber passed over the bridge and switch stands. We think the court was right in refusing the above instruction. Zeta was fourteen miles south of the accident. We cannot say, as a matter of law, that defendant is absolved from the duty of discovering the projecting timber after the train left Zeta. Defendant is not entitled to more than is found in the court's instruction in Hicks v. Railroad, 64 Mo. 430, l. c. 433, predicated on defendant's theory of defense. There the instruction authorized a verdict for defendant, if, in substance, the timber worked out of place by accident and without fault, and its condition was unknown, and could not, by the exercise of ordinary care, have been discovered. In that case the cars were inspected at Pleasant Hill, twelve miles from Lee's Summit, where the plaintiff was hurt, and no projecting timber was seen until the plaintiff was hit. There were also five bridges between Pleasant Hill and Lee's Summit, the last one four miles east of Lee's Summit. The Supreme Court affirmed the action of the trial court in submitting the cause to the jury, and said, l. c. 440: "These companies not only owe a duty to passengers and others lawfully on their tracks and platforms, but a duty to the public to exercise the rights conferred upon them, with a due regard to the safety of all persons and property."

V. To the end that plaintiff may have an opportunity to amend her petition, pleading general negligence only, if advised so to do, for which position we have ample authority (Bowen v. Railway, 118 Mo. 541, l. c. 548, 24 S. W. 436; Bibb v. Grady, 231 S. W. 1020; Rutledge v. Railway, 123 Mo. 121, 24 S. W. 1053; Finnegan v. Railroad, 244 Mo. 608, 149 S. W. 612; Chandler v. Railroad, 251 Mo. 592, 158 S. W.), the Commissioner recom-

mends that the judgment be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of Davis, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Daues, P. J.,* and *Nipper, J.,* concur; *Becker, J.,* in result.